Murtaugh v. Colligan.

---

## Bernard Murtaugh
### v.
## Thomas Colligan.

*Negotiable Instruments—Notes—Forgery — Ratification — Inconsistent Defenses—Evidence—Instructions—Set-off.*

1. It is improper to give instructions in support of inconsistent defenses.

2. In an action on a note and to recover money paid by the plaintiff as surety on a second note, the defendant can not repudiate the second note because it was raised in amount after it was executed by him as maker, and at the same time deny his liability on the first note on the ground that it was paid by the proceeds of a transfer of the second note.

3. A promise by the purported maker to pay a forged note binds him without any new consideration, provided he has full knowledge of the facts affecting his rights.

4. Where a note is assigned after maturity, matters of set-off in favor of the maker as against the payee, accruing after such assignment, can not be allowed.

[Opinion filed December 8, 1888.]

APPEAL from the County Court of La Salle County; the Hon. FRANK P. SNYDER, Judge, presiding.

Messrs. R. D. McDONALD and A. R. GREENWOOD, for appellant.

It is a general rule that when the plaintiff makes out a *prima facie* right to recover, as was done in this case, if the defendant seeks to avoid the recovery of a judgment on the note, he must show by a preponderance of the evidence that such note was paid before the plaintiff became the owner of it. The burden of proof is upon him to rebut every presumption in favor of the plaintiff.

It is a presumption of law that a note was assigned before maturity. Mulford v. Shepard, 1 Scam. 583; Mobley v. Ryan, 14 Ill. 51; Richards v. Bitzer, 53 Ill. 466; Clark v. Johnson, 54 Ill. 296.

It is a rule of law that, unless otherwise specially agreed upon, the taking of a promissory note for a pre-existing debt, or a contemporaneous consideration, is treated *prima facie* as a conditional payment only; that it is a payment only if it is duly paid at maturity. Story on Promissory Notes, Chap. 3, Sec. 104; Heartt v. Rhodes, 66 Ill. 356; Burdick v. Green, 15 Johns. 247.

The second instruction is erroneous in this, that it tells the jury the mere giving of the $150 note to Cain by appellee on February 5, 1885, and that Mathew Colligan obtained $150 on it, operated as a part payment of the $242.25 note, but does not state that the appellee afterward paid the $150 note, or any part of it. This instruction can not be sustained by the above authorities.

In the case at bar the appellee was the one to be benefited by procuring the loan from Patrick Cain, and appellant was assuming a liability as a mere friendly act to aid appellee in getting the money from Cain on the note, and when sued by Cain and compelled to pay the judgment, he (appellant) was subrogated to all the rights of Cain under that judgment, and he had a right to sue on the $242.25 note that he held as collateral security, as the evidence shows, or he had the right

to pursue appellee on the $250 note to reimburse himself for the money paid on the Cain judgment. This was all appellant was seeking to do. Harvey v. Drew, 82 Ill. 606; Hoyt v. Lock, 41 Ill. 119; Klein v. Mather, 2 Gilm. 317.

Messrs. MOLONEY & STEAD, for appellee.

LACEY, P. J. This was an action in assumpsit by appellant against appellee. The declaration contained one special count, based on a promissory note given by appellant to Mathew Colligan, for $242.25, dated February 15, 1884, due in nine months after date, with eight per cent. interest from date, and indorsed by the payee to appellant, and the ordinary common counts.

It appears from the evidence that Mathew Colligan, who was the son of appellee, held the note above described, on his father, and, as testified to by the father, on February 5, 1885, the appellee and his son had a settlement and agreed there should be $100 credited on the note on account of the wages of a minor son of appellee laboring for Mathew in Nebraska for about one year up to that time. That would leave, as they agreed, $150 due on the note.

The appellee, in order to pay his son this balance on the 'note, was then to raise money on his own note with security which, when raised, was to be applied on the balance due on the note in question. In pursuance of this arrangement appellee executed to Patrick Cain his note for $150, dated February 5, 1885, due in one year after date, with eight per cent. interest from date, and gave it to his son Mathew, who was to obtain the security on the note, and then negotiate it to Cain and obtain the money on it. The old note was not given up by Mathew, but was to be sent to appellee. Now, as is claimed by appellee, before presenting the note to the sureties to be signed, said Mathew, without the knowledge or consent of appellee, raised the note to $250 and then procured the signatures of appellant and Maurice Colligan, and then presented the note to Cain and obtained $250 on it. As is shown by the evidence of appellant, about the time he signed the note as

security Mathew indorsed and delivered to him the old note as security against signing the new note.

Afterward appellant was sued on the $250 note which he had signed as security, in a suit against him and Maurice Colligan, and judgment was rendered against them, and appellant had to pay $287.77 to Cain, besides costs. This last amount is the basis of the common counts for money paid out at appellee's request.

Appellee now in this suit repudiates his liability to pay any part of the money paid by appellant by reason of his being security for him on the new note, because the note was raised by his son, and, if we understand the theory of instruction number two, given for appellee, he insists the old note was paid, or more properly, the balance due on it of $150, by the money his son Mathew received on the raised note of Cain. The portion of the instruction referred to reads as follows: "And if the jury further believe, from the evidence, that the said note (the old note) was paid by the giving of a new note on February 5, 1885, for the sum of $150, by Thomas Colligan to Cain, upon which note the said Mathew Colligan secured from the said Cain the sum of $150 to apply on the said note of $242, and by the payment of $92 on the said $242 note in work and labor, then the jury are instructed that the plaintiff in this case can not recover on the said $242 note;" and the next and third instruction tells the jury that, in the event the new note in question was raised without the consent of appellee, then he would not be liable on it as principal, and appellant could not recover for having paid as surety. Thus the appellant was closed out entirely by these instructions as to defenses entirely inconsistent with each other. If the appellee is allowed to repudiate his being principal on the new note then the money was not raised by him or on his responsibility, which he claims he should be credited for in discharge of the old note to the amount of $150. In that event appellant would have raised this money on his own name, without any recourse on appellee. He would have recourse on Mathew on account of the fraud perpetrated on him, and therefore the old note which Mathew gave him would rightfully be the

property of appellant to reimburse him for the money he had wrongfully paid on the Mathew account. If the appellee acknowledges his liability on the new note as principal, then the old note is paid and the appellant can recover on the common counts. But both these inconsistent defenses can not be made, and the jury should have been so told. The appellant had a clear right to recover either on the old note or for money paid out to appellee's use, unless appellee could show some other defense to the old note. This he attempts to do by claiming a set-off to the note to the amount of $100 for work and labor performed by his minor son John for Mathew in Nebraska, after the note was indorsed to appellant by Mathew, to secure him against liability on the new note, in addition to the $100 agreed to be credited by Mathew on the note for labor before the new note was made out; also $64 that Mathew, in 1880 or 1881, on division of property by appellee among his children, agreed to pay to one Blanchard, on a debt owed by appellee, and which, subsequently to the indorsement of the old note to appellant, appellee was compelled to pay. We must consider whether either of these claims was a valid set-off against the said note. We think clearly the first, and probably the second was not. Sec. 12, Chap. 98 of the R. S. (Negotiable Instruments) provides that in case a note is assigned after due, a set-off by the maker against the payee may be allowed, "if such demand be such as might have been set off against the assignor while the note or bill belonged to him."

It will be seen that the account of appellee against Mathew for labor of his son in 1885–6, had not accrued when appellant became the holder of the old note, and under the statute could not have been set off. This claim for labor accrued after Mathew had parted with the note. The old note and interest at the time of the settlement amounted to about $261, and allowing the $100 claimed for labor, a balance would exist of about $161.

The $64 was not paid till after the transfer of the old note, the balance on which, according to appellant's testimony, of $150, had been found due. This item was not then claimed.

At best it is a stale claim, and, we think, could not be allowed as a set-off against the old note. It would be inequitable to do so. But even if this were allowed, there would still remain over $90 due on the old note, and appellant has been allowed nothing.

As to the question of ratification by appellee to the holder of the $250 note, we find the evidence quite strong. Appellee paid $15 interest on the new note, but he says he paid it before he saw it, though he did not object afterward.

He says in his testimony : " I might have agreed to pay the $250 note. I was excited. I may have agreed to pay it." When he went to Cain's to pay the interest he saw the note, and paid $15 interest on it, and may have agreed to pay it. Patrick Cain testifies that he heard a conversation between appellant and appellee at the church door in La Salle, and appellee agreed to pay the note. "He said he did not want his wife to know anything about it."

The appellee's instructions tell the jury in substance that this would not bind him unless such promise was on "a valuable consideration;" presumably on a new consideration, different from what passed when the note was delivered. We understand the law to be that a promise by the purported maker, to pay a forged note, binds him without any new consideration, provided the promisor had full knowledge of the facts affecting his rights. Gleason v. Henry, 71 Ill. 109; 1 Parsons on Notes and Bills, 101; Wilson v. Alexander, 3 Scam. 392. The appellee's instructions, as given, were erroneous and calculated to mislead. It will not be necessary to notice the instructions in detail, as the views here expressed will be a sufficient guide in case of a new trial.

The judgment of the court is therefore reversed and the cause remanded.

*Reversed and remanded.*