Louis Jacoby, Respondent, *v.* Kline Bros. Co., Inc., Appellant, Impleaded with Harry Goodman, Doing Business under the Name and Style of Try Rite Dresses, Defendant.

First Department, June 21, 1934.

*Stewart Maurice* of counsel [*Bert Cohen*, attorney], for the appellant.

*Bernard Fliashnick*, for the respondent.

Untermyer, J. The plaintiff, claiming to be a holder in due course, has recovered judgment on a check made by the defendant Kline Bros. Co., Inc., to the order of " Tri Rite Dresses." The check was cashed by the plaintiff for one Harry Goodman, whose signature appears on the check as indorsee below the alleged indorsement of Tri Rite Dresses. Between January and. May, 1933, fifteen other checks of the defendant, payable to Tri Rite Dresses and indorsed by Goodman, were cashed by the plaintiff and paid by the defendant. It was subsequently discovered that these checks and the check involved in this action were procured by the fraud of Aranow, an employee of Kline Bros. Co., Inc., in repre-

senting that they were in payment of invoices for merchandise delivered by Tri Rite Dresses. It was then ascertained that no such merchandise had been delivered, that the invoices were fictitious, that there was no such firm or corporation as Tri Rite Dresses, and that Aranow had misappropriated the checks. The plaintiff failed to establish any cause of action on the check payable to Tri Rite Dresses, because he failed to prove indorsement by the payee. That issue was expressly tendered by the answer, which denied " the alleged signatures of the Try Rite Dresses and Harry Goodman on said check as indorsees thereof and demands that said signatures be proved." Without proof of indorsement by the payee through whom title to the instrument was derived, the plaintiff could not recover. (Neg. Inst. Law, § 60; *Graves* v. *American Exchange Bank*, 17 N. Y. 205; *Van Syckel* v. *Egg Harbor C. & L. Co.*, 109 N. J. Law, 604.) Not only was there no proof of indorsement by the payee, but the evidence affirmatively established the contrary. It was established without dispute that there was no such concern as " Tri Rite Dresses " and that the maker was induced to execute the check by the fraud of Aranow, in the belief that there was. Under these circumstances the payee was not a fictitious person, and the check is not to be regarded as payable to bearer, within the meaning of section 28 of the Negotiable Instruments Law. " The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person." (*Shipman* v. *Bank of State of New York*, 126 N. Y. 318.) To the same effect are *Strang* v. *Westchester County National Bank* (235 N. Y. 68); *Seaboard National Bank* v. *Bank of America* (193 id. 26); *Ulmann Co., Inc.*, v. *Central Union Trust Co.* (257 id. 563, overruling *Hartford* v. *Greenwich Bank of City of New York*, 215 id. 726). The plaintiff, therefore, had no title to the check.

It is suggested that the maker was negligent, first in issuing the check to the order of " Tri Rite Dresses " and later in failing to detect the forged indorsements when fifteen other checks, similarly indorsed, were paid. But the maker had the right to make the check payable to whomsoever it pleased and as a condition of payment to require indorsement by the payee and by no one else. In this respect there was no such negligence as will estop him to dispute the plaintiff's title. " It certainly is not a general rule of law that a person can be deprived of his property by an unauthorized transfer thereof, simply because he has not exercised ordinary care to prevent such transfer. I may carelessly

intrust a dishonest person with my personal property, and thus put it in his power to sell it; and yet it has never been held that, in such case, my carelessness will deprive me of the right to reclaim my property, the person thus intrusted having neither the real nor apparent power to sell it. I may place my unindorsed bills in the hands of an agent, and thus place it in his power to forge an indorsement; and yet the indorsement would not bind me. The principle that when one of two persons, equally innocent, must suffer a loss by the act of a third person, he shall bear the loss who placed it in the power of such third person to perpetrate the act, does not apply to such cases." (*People* v. *Bank of North America*, 75 N. Y. 547, 561, 562.) Nor was the maker under any duty to determine whether the indorsement of the fifteen earlier checks was genuine (*Welsh* v. *German American Bank*, 73 N. Y. 424), as might be the case between depositor and depository in respect of forgeries appearing on the face of the check. (*Critten* v. *Chemical National Bank*, 171 N. Y. 219.) In *Shipman* v. *Bank of State of New York* (*supra*) the court said (at p. 328): "The examination of the checks would, of course, enable the plaintiffs to ascertain whether their own signature was genuine, and whether the amount, date or name of the payee had been changed, but would not necessarily enable them to detect the forgery of the payee's name. The law imposed no duty upon the plaintiffs to do more than they did to ascertain whether the indorsements on the checks were genuine. The defendant's contract was to pay the checks only upon a genuine indorsement. The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must, at its own peril, determine that question. It has the opportunity, by requiring identification when the check is presented, or a responsible guaranty from the party presenting it, of ascertaining whether the indorsement is genuine or not. When it returns the check to the depositor, as evidence of a payment made by his direction, the latter has the right to assume that the bank has ascertained the fact to be that the indorsement is genuine."

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed and judgment directed in favor of the defendant Kline Bros. Co., Inc., dismissing the complaint upon the merits, with costs in all courts.

FINCH, P. J., and MARTIN, J., concur; MERRELL and O'MALLEY, JJ., dissent and vote for affirmance.

O'MALLEY, J. (dissenting). We are here concerned with the right of the plaintiff to recover from the defendant Kline Bros.

Co., Inc., the amount of a check made by it to the order of Tri Rite Dresses, and cashed by plaintiff. The defendant pleaded that the check was procured by fraud and without consideration; that the plaintiff was not a *bona fide* holder in due course; denied the alleged signatures of Tri Rite Dresses and one Goodman, allegedly doing business under that name, as indorsees, and demanded that said signatures be proved.

The cause was tried before the court without a jury. The trial justice heard and saw the witnesses. To his " sophistication and sagacity " the law confided " the duty of appraisal. * * * His was the opportunity, the responsibility and the power to decide." (*Boyd* v. *Boyd*, 252 N. Y. 422, 429.)

The evidence justified a finding of the following facts: Plaintiff conducted a cigar manufacturing business since 1899, which was located where he cashed the check in question since 1909. He also cashed checks as an aid to business, as persons thus accommodated in most instances purchased merchandise. He knew Harry Goodman, whose signature appears on the check as indorsee, since January, 1933. Plaintiff had called at Goodman's place of business, though he had not seen him there, and Goodman had been to see plaintiff several times.

Prior to cashing the check sued upon, plaintiff had cashed some fifteen other checks of the defendant, all payable to Tri Rite Dresses and indorsed by Goodman. These checks had been dated from January 19 to May 13, 1933. The check sued upon was dated May 24, 1933.

The earlier checks cashed by plaintiff had been honored by the defendant. So far as this record discloses they have never been disputed. Placed in evidence by the defendant they clearly established that the indorsement of Tri Rite Dresses by Goodman was in the same handwriting as the indorsement on the check here sued upon. No evidence was offered by defendant to show either prior or present improper indorsement.

On May 24, 1933, Goodman called plaintiff on the telephone. As a result one Ferrara came to plaintiff's place of business with the check sued upon, indorsed by Tri Rite Dresses through Goodman. After deducting the amount of a small purchase, the plaintiff gave Ferrara his own check for the balance of defendant's check. Goodman had been introduced to plaintiff by Ferrara, or his brother, and the other checks cashed had been presented by Ferrara.

The record fails to show that the plaintiff had any knowledge of the manner in which the defendant had been induced to sign any of the checks in question. The court was, therefore, justified in finding, in addition to the facts above detailed, that plaintiff

had no knowledge, actual or implied, that this check, or the other checks mentioned, had been procured from the defendant through the fraudulent representation of its employee Aranow, that they were in payment of past due accounts. Aranow, though a witness for the defendant, did not implicate plaintiff. As between the parties, therefore, both were innocent. Equitably it is not unjust to hold (if legally sustainable) that defendant, whose acts permitted the fraudulent scheme to be continued in operation, should be made to shoulder the resultant loss.

We are of the opinion that the evidence here detailed was sufficient to justify a recovery by the plaintiff. He sufficiently proved the indorsement of the payee. The fifteen other checks produced by the defendant show that without objection it paid on an exactly similar indorsement. As already noted, defendant offered no proof that any of the checks were not properly indorsed.

The question of a fictitious payee is not here presented. The payee Goodman really existed and was using the name Tri Rite Dresses. Defendant was deceived as to its indebtedness to the payee, rather than as to his identity.

The plaintiff, therefore, having shown that he parted with value for the check sued upon; that he was without actual or constructive knowledge of the fraud which induced its issue; and having proved the indorsement of the payee, was entitled to judgment.

It follows, therefore, that the determination of the Appellate Term should be affirmed, with costs.

MERRELL, J., concurs.

Determination appealed from and judgment of the Municipal Court reversed and judgment directed in favor of the defendant, appellant, dismissing the complaint upon the merits, with costs in all courts.