BANK OF NEW YORK, Plaintiff, *v.* PUBLIC NATIONAL BANK AND TRUST COMPANY OF NEW YORK et al., Defendants.

PUBLIC NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Defendant and Third-Party Plaintiff, *v.* MERGENTHALER LINOTYPE COMPANY et al., Third-Party Defendants.

CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Defendant and Third-Party Plaintiff, *v.* PENNSYLVANIA EXCHANGE BANK et al., Third-Party Defendants.

MANUFACTURERS TRUST COMPANY, Defendant and Third-Party Plaintiff, *v.* JACK S. ESFORMES, Doing Business under the Name of GREELEY SQUARE CHECK CASHING SERVICE, et al., Third-Party Defendants.

Supreme Court, Special Term, New York County, August 26, 1948. Reargument, November 16, 1948.

*Sullivan & Cromwell* for plaintiff.

*Maurice & McNamee* for Public National Bank and Trust Company of New York, defendant and third-party plaintiff, and another.

*Leo T. Kissam* for Chase National Bank of City of New York, defendant and third-party plaintiff.

*Newman & Bisco* for Manufacturers Trust Company, defendant and third-party plaintiff.

*Gasser, Hayes & Davidson* for Mergenthaler Linotype Company, third-party defendant.

*Max M. Littman* for Royal Industrial Bank, third-party defendant.

*George Mandelbaum* for Lexington-West, Inc., third-party defendant.

*Dorff & Levy* for Pennsylvania Exchange Bank, third-party defendant.

*Meyer Schiff* for Jack S. Esformes, doing business under the name of Greeley Square Check Cashing Service, third-party defendant.

*George R. Crosby* for American Surety Company of New York, third-party defendant.

*David J. Landau* for Atlantic Trading Co., third-party defendant.

HECHT, J. Mergenthaler Linotype Company, a third-party defendant, moves to dismiss the causes of action alleged against it in the third-party complaint of third-party plaintiff Manufacturers Trust Company. Companion motions are directed against similar causes of action in the third-party complaints of third-party plaintiffs Public National Bank and Trust Company and the Chase National Bank of the City of New York, and in the third-party answers of third-party defendants Hellenic Bank Trust Company, the Pennsylvania Exchange Bank and Royal Industrial Bank. The bases of the motions are (a) that the causes of action are legally insufficient (Rules Civ. Prac., rule 106); and (b) that they are not properly interposed in the instant action.

This litigation stems from the swindle practiced upon Mergenthaler by its employee Nickel and one Julius Lobel. Plaintiff, Bank of New York, was Mergenthaler's bank of deposit, and all the checks involved were drawn on it.

The main complaint alleges that Nickel induced officers of Mergenthaler to sign on its behalf numerous checks to the order of " Clifton Manufacturing Company " and or " A. O. Schumacher & Sons " by falsely representing to them that such checks were in payment for goods sold and delivered to Mergenthaler. Mergenthaler believed that the payees named in the checks identified a " real and actual firm or corporation which had supplied goods and materials to Mergenthaler and to which Mergenthaler was indebted therefor." In signing the checks, Mergenthaler's intention " was to pay and discharge thereby a bona fide indebtedness to a real and actual firm or corporation for goods sold and materials delivered to Mergenthaler by such real and actual firm or corporation." The names of the two payees, unknown to Mergenthaler, " were wholly fictitious, and did not represent, describe or identify any real or actual firm or corporation which had supplied goods or materials to Mergenthaler or to which Mergenthaler was indebted, or any real and actual firm or corporation." Without any authority so to do, Nickel delivered the checks to Lobel. The latter indorsed the checks respectively " Clifton Manufacturing Co." and " John B. Clifton ", or " A. O. Schumacher & Sons " and " Alfred O. Schumacher " and negotiated them. These indorsements were forged and unauthorized.

After the foregoing indorsements and one or more intermediate indorsements had been placed upon them, one of the three collecting banks (the several defendants Public, Chase and Manufacturers) indorsed the respective checks "Prior Endorsements Guaranteed", and presented them to plaintiff for payment. By their several indorsements, the collecting banks respectively guaranteed to plaintiff the regularity and genuineness of the prior indorsements thereon. Plaintiff then being indebted to Mergenthaler, in sums in excess of the amounts of the checks, paid them to the collecting banks in reliance on their indorsements. Plaintiff's demand for repayment of these sums has been refused by the collecting banks. The collecting banks admit that the respective checks were indorsed "Clifton Manufacturing Co." and "John B. Clifton" or "A. O. Schumacher & Sons" and "Alfred O. Schumacher"; that they guaranteed to plaintiff the regularity and genuineness of the prior indorsements and received payment of the checks from plaintiff; and that they refused the latter's demand for repayment; and deny all the other allegations of the complaint.

Plaintiff brought the instant action to recover the $336,607.87 thus paid by it to the three collecting banks and seeks judgment of $30,353.31 against Public, of $230,535.14 against Chase, and of $75,789.42 against Manufacturers. The collecting banks in turn served third-party complaints upon those who had collected the amounts of the checks from them after guaranteeing prior indorsements thereon. Chase sued third-party defendants the Pennsylvania Exchange Bank and Hellenic; Public sued third-party defendant Royal; and Manufacturers sued two check-cashing companies. Pennsylvania and Royal also served third-party answers upon respective check-cashing companies who had collected from them after guaranteeing prior indorsements.

In addition thus to seeking recovery over from the banks or check-cashing companies to whom they had made payment, Public, Chase, Manufacturers, Pennsylvania and Royal have served third-party pleadings upon Mergenthaler. Hellenic received its checks directly from Clifton or Schumacher, so that its third-party pleading is directed solely against Mergenthaler. Mergenthaler has made the instant motions to dismiss these six third-party pleadings. The third-party complaint of Manufacturers may be taken as typical.

This complaint alleges that Lobel, using the alias of John B. Clifton, filed in the New York County Clerk's office a certificate stating that the latter intended to transact business under the

name of Clifton Manufacturing Co. (hereinafter called " Clifton ") and that Lobel, using the aliases of Alfred O. Schumacher and Frank Schumacher, filed in the same office a certificate stating that the Schumachers intended to transact business under the name of A. O. Schumacher & Son (hereinafter called " Schumacher "). Lobel was the sole owner of the businesses conducted under said trade names. Prior to the issuance and delivery of the checks sued upon herein, a course of dealings had been established between Mergenthaler on the one hand and Clifton and Schumacher on the other hand, by the receipt and acceptance by Mergenthaler of invoices in the name of Clifton and Schumacher, and by the issuance and delivery by Mergenthaler to Clifton and Schumacher of a series of prior checks for substantial amounts against such invoices, which checks were drawn upon and paid by plaintiff. All of the checks sued upon herein were submitted for signature to Mergenthaler's officers, supported by invoices of Clifton or Schumacher. The checks were indorsed by Lobel in his respective trade names, and were paid by Manufacturers in reliance upon that and succeeding indorsements, in good faith and in the ordinary course of business, without notice or knowledge of any alleged defect or irregularity in connection with the indorsements or of any alleged defect in title.

The first cause of action alleges that in issuing said checks and putting them into circulation, Mergenthaler knew that they would pass through the hands of parties other than the named payees and would be presented for payment to plaintiff through banking channels. " As to all parties who might become holders of its checks for value in good faith and in the ordinary course of business, Mergenthaler owed a duty to issue and put into circulation only valid checks, negotiable by delivery or by indorsement of the payee of the instrument and delivery thereof." In total disregard of such duty Mergenthaler negligently issued the checks, negligently permitted them to come into Lobel's possession, and negligently failed to detect the alleged forgery of the indorsements on said checks and on earlier checks issued by Mergenthaler to the same payees. Mergenthaler was otherwise negligent in the examination of returned cancelled vouchers and in the auditing of its account with regard thereto and in the inspection of invoices against which such checks were issued, in negligently failing to make proper inventories and in auditing inventories against invoices, and in failing to audit properly said checks and the invoices against which they were drawn, and in otherwise failing to take reasonable steps to

prevent the scheme to defraud. Manufacturers Trust Company has been damaged by said negligence of Mergenthaler without any contributory negligence on its part.

The second cause of action alleges that by drawing the checks sued on herein, Mergenthaler admitted the existence of Clifton Manufacturing Co. or of A. O. Schumacher & Sons, the respective payees named thereon, and the then capacity of such payees to indorse said checks. Manufacturers relied upon the foregoing admissions in guaranteeing all prior indorsements upon such checks and in collecting the proceeds thereof from plaintiff.

In connection with both the first and second causes of action, it is alleged that Manufacturers is entitled to recover of Mergenthaler a sum equal to the amount of any judgment which plaintiff may recover against Manufacturers.

The third cause of action alleges that Mergenthaler entered into a written agreement with plaintiff, Manufacturers and others, providing that all parties assign to Mergenthaler all causes of action against Nickel and the others who participated in the fraud, and that all net recoveries be applied by Mergenthaler on a prorata basis in reduction of all claims arising from Nickel's fraud, and as so applied, inure to the benefit of plaintiff and of all indorsers. Mergenthaler has collected large sums of money and is pursuing other rights and remedies which will result in the collection of further substantial sums as net recoveries under said agreement. Manufacturers, having duly performed its part of the agreement, is entitled to recover its prorata share of such net recoveries from Mergenthaler.

The three causes of action set forth in the five other third-party pleadings against Mergenthaler are substantially similar to the foregoing.

In addition, Manufacturers alone sues on a fourth cause of action. This is based on a depositor's forgery bond issued to Mergenthaler by American Surety Company, whereby the latter agreed " to indemnify Mergenthaler and any bank or banks in which Mergenthaler maintained a checking account against losses to an amount not exceeding $75,000 sustained through the forgery or alteration of any check, including any check made or drawn in the name of Mergenthaler payable to a fictitious payee and endorsed in the name of such fictitious payee " Mergenthaler maintained a checking account with Manufacturers. Said bank authorized Mergenthaler to enforce payment of all claims thereunder as agent for itself and Bank of New York and Manufacturers, the banks covered thereunder,

and Mergenthaler in such capacity has collected $75,000 on the bond. Plaintiff had agreed with Mergenthaler to credit its account with any amounts recovered herein from Manufacturers. By reason of the premises, Manufacturers is entitled to recover from Mergenthaler the moneys received by it from American Surety Company.

In order to pass on the legal sufficiency of the foregoing causes of action alleged in the third-party complaint against Mergenthaler, it is necessary to understand the basis on which Bank of New York can prevail in the main action.

Bank of New York has the right to bring this action against the collecting banks on their indorsement and guarantee, to recover its money paid to them under a mistake and without consideration. (*City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64, 68; *Corn Exch. Bank* v. *Nassau Bank*, 91 N. Y. 74, 81.) In order to prevail in the action, Bank of New York would have to establish that it was liable to Mergenthaler for having paid out its depositor's money without authority, and that it had actually made such payment to Mergenthaler or that the latter had recovered judgment against it for such amount. (*Corn Exch. Bank* v. *Nassau Bank, supra*, pp. 80–81; *City of New York* v. *Bronx County Trust Co., supra*, p. 70; *Halsey* v. *Bank of New York & Trust Co.*, 270 N. Y. 134, 138; *International Aircraft Trading Co.* v. *Manufacturers Trust Co.*, 297 N. Y. 285, 293).

Mergenthaler could not recover from plaintiff nor plaintiff from the collecting banks if " Clifton Manufacturing Co." and " A. O. Schumacher & Sons ", the payees named in the checks were *actual* firms, even though Mergenthaler was defrauded into issuing the checks to such payees in reliance upon false representations that it was indebted to them for merchandise furnished. (*First Nat. Bank* v. *American Exch. Nat. Bank*, 170 N. Y. 88, 91–93; *Halsey* v. *Bank of New York & Trust Co., supra*, pp. 138–140; *Sherman* v. *Corn Exch. Bank*, 91 App. Div. 84, 85–86 [1st Dept.]; *Holub-Dusha Co.* v. *Germania Bank*, 164 App. Div. 279, 283–284 [1st Dept.].) This principle, which is conceded by Mergenthaler, is based upon the proposition that one who purchases a draft from " the person intended as payee of the draft " in good faith for value through indorsement of the payee, is entitled to recover its amount even though the draft represents the proceeds of a fraud committed upon the payor by the payee. (*First Nat. Bank* v. *American Exch. Nat. Bank, supra*, p. 92.)

"The result of it all was that the check and its proceeds reached the identical person whom the drawer intended that it should reach, to wit., the person who had signed the contract of sale. * * * It is true that [he, the thief] * * * committed a fraud upon plaintiff in inducing it to enter into a contract with a person who had no authority to make it. But the defendant [the drawee bank] was not responsible for that fraud, and the risk that plaintiff might be cheated in this manner was not one which the bank assumed. Its business and duty was to pay the check to the person to whom the drawer intended, when he made it, that it should be paid. If it did that, as I think it clearly did in the present case, it cannot be held liable for the fraud by which the drawer was led to intend that the amount represented by the check should be paid to a person to whom such drawer owed nothing and from whom it received no consideration." (*Holub-Dusha Co.* v. *Germania Bank, supra,* p. 284.)

On the other hand, if "Clifton Manufacturing Co." and "A. O. Schumacher & Sons" did not exist as legally constituted firms and this was unknown to Mergenthaler, who believed them to be actual firms and intended the checks to be payable only to the actual firms, then such check "constituted an order to pay to a non-existent person; in other words, it was a check without a payee to whom it could be delivered, who could transfer it or who could demand or receive payment. Such a check is a mere scrap of paper creating neither right nor obligation". (*Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135, 145.) No one in the chain of possession is protected in making payment on the indorsement of the non-existing payee. (*Shipman* v. *Bank of State of New York,* 126 N. Y. 318, 330–331; *United Cigar Stores Co.* v. *American Raw Silk Co.,* 184 App. Div. 217 [1st Dept.] affd. 229 N. Y. 532; *Strang* v. *Westchester Co. Nat. Bank,* 235 N. Y. 68, 70–72; *Ulmann Co.* v. *Central Union Trust Co.,* 257 N. Y. 563; *City of New York* v. *Bronx County Trust Co.,* 261 N. Y. 64, 69–70, *supra; Swift & Co.* v. *Bankers Trust Co., supra.*) Two reasons are assigned for this conclusion.

First, the payor did not intend the check to be paid to a nonexistent person or company, therefore the indorsement of the name of such nonexistent payee conveys no title because the payment is not made in accordance with the payor's direction. As explained by LEHMAN, J., in *Swift & Co.* v. *Bankers Trust Co. (supra,* pp. 138–139):

"The defendant was authorized to disburse moneys standing to the plaintiff's credit only upon the order and direction of

the plaintiff. (*Shipman* v. *Bank of State of New York,* 126 N. Y. 318.) The plaintiff's direction to the defendant was to pay the amount of the checks only upon the order of John R. Turley. The plaintiff was induced to believe that an actual person John R. Turley was in existence and, acting under that belief, it named him as payee. It had no intention to vest title to the checks in any person other than the payee so named or to authorize any other person to indorse or collect the checks. Intending to name an existing payee, the plaintiff failed in its intention. The defendant bank, believing that it was paying the checks in accordance with the plaintiff's authorization, upon the order or indorsement of the payee named by the plaintiff, has in fact paid the checks upon the order of a person not named as payee. The defendant, challenged by the plaintiff to show its authority to make such payments and to charge the payments against the moneys in plaintiff's deposit account, can justify the charge only if the checks drawn by the plaintiff to a named payee may, contrary to their terms and contrary to the intention of the drawer, be treated as if drawn payable to bearer, because the payee named is a mythical, non-existent person.

" The court has said that ' the maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person.' (*Shipman* v. *Bank of State of New York,* 126 N. Y. 318, 330.) The Negotiable Instruments Law (Cons. Laws, ch. 38) has, in this respect, codified the common law rule: ' The instrument is payable to bearer * * * 3. When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable.' (§ 28)."

Secondly, the bank or other transferee accepting the check in the first instance has the duty of satisfying itself that the payee named therein is in existence and has indorsed the check, and those receiving the check from the first transferee relied on the responsibility of the respective transferror with whom they deal. " It [the bank] owed a duty to them [its depositors] to make payment only to the payees therein named or to their order. It made no inquiry as to the identity of the payees or as to the genuineness of their purported endorsements. * * * If a stranger representing himself as ' C. Swift,' for example, had presented the check, the bank would have been bound at its peril to see that he was, in truth, the payee entitled to receive payment thereon. * * *. The depositor has a right to rely

on the bank to be careful not to pay out money to the wrong person." (*Gutfreund* v. *East Riv. Nat. Bank,* 251 N. Y. 58, 64-65.) "It is a matter of common knowledge that a bank in cashing a check or in accepting it for deposit ordinarily relies only upon the responsibility of the party, usually its own customer, with whom it deals. It pays no attention to endorsements other than his. Upon no other basis could the banking business be carried on." (*City of New York* v. *Bronx County Trust Co.,* 261 N. Y. 64, 72-73, *supra.*)

"The defendants [collecting bank] ought not in conscience to retain the money, because it does not belong to them; and for the further reason that the defendants and the previous indorsers have, each, on the same principle, their remedy over against the party to whom they respectively paid the money, until the wrongdoer is finally made to pay. If that party should be irresponsible, or if he cannot be found, the loss ought to fall on the party who, without due caution, took the bill from him." (*Bank of Commerce* v. *Union Bank,* 3 N. Y. 230, 237.) "If the defendant is compelled to reimburse the plaintiffs, it has its remedy over against the prior indorsers; and if they in turn have no remedy against the prior indorsers, it is because they have chosen to deal with irresponsible persons, or those of whose character and responsibility they were ignorant." (*White* v. *Continental Nat. Bank,* 64 N. Y. 316, 322.)

The foregoing cases all dealt with nonexistent individual payees. In the recent case of *International Aircraft Trading Co.* v. *Manufacturers Trust Co.* (297 N. Y. 285) the check had been drawn to a corporation which, unknown to the payor, was not organized until about three weeks later, and which never issued any stock or conducted any business. The collecting bank paid the check without any indorsement by the corporation, and without receiving any corporate resolution or other authorization for the creation of the account in the corporate name. The payor's claim against the payee for return of the money was not grounded on any allegation of fraud but one of simple breach of contract (p. 290). The court allowed recovery to the payor against the drawee bank, and recovery over by the latter against the collecting bank.

It follows in the instant case that if " Clifton Manufacturing Co." and "A. O. Schumacher & Sons " at the time of the issuance of the checks were, unknown to Mergenthaler, firms which were not legally in existence, defendants are liable for the amount of the checks, since it was incumbent on them to see to it that the checks were indorsed by the payee named therein. That is

the express holding of *Jacoby* v. *Kline Bros. Co.* (241 App. Div. 470, 471[1st Dept.]) where the court said, per UNTERMYER, J.: "The plaintiff, claiming to be a holder in due course, has recovered judgment on a check made by the defendant Kline Bros. Co., Inc., to the order of 'Tri Rite Dresses.' * * * The plaintiff failed to establishd any cause of action on the check payable to Tri Rite Dresses, because he failed to prove indorsement by the payee. That issue was expressly tendered by the answer, which denied ' the alleged signatures of the Try Rite Dresses and Harry Goodman on said check as indorsees thereof and demands that said signatures be proved.' Without proof of indorsement by the payee through whom title to the instrument was derived, the plaintiff could not recover. (Neg. Inst. Law, § 60; *Graves* v. *American Exchange Bank,* 17 N. Y. 205; *Van Syckel* v. *Egg Harbor C. & L. Co.,* 109 N. J. Law, 604.) Not only was there no proof of indorsement by the payee, but the evidence affirmatively established the contrary. It was established without dispute that there was no such concern as ' Tri Rite Dresses ' and that the maker was induced to execute the check by the fraud of Aranow, in the belief that there was. Under these circumstances the payee was not a fictitious person, and the check is not to be regarded as payable to bearer, within the meaning of section 28 of the Negotiable Instruments Law. ' The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person.' (*Shipman* v. *Bank of State of New York,* 126 N. Y. 318.) To the same effect are *Strang* v. *Westchester County National Bank* (235 N. Y. 68); *Seaboard National Bank* v. *Bank of America* (193 id. 26); *Ulmann Co., Inc.,* v. *Central Union Trust Co.* (257 id. 563, overruling *Hartford* v. *Greenwich Bank of City of New York,* 215 id. 726). The plaintiff, therefore, had no title to the check."

It also follows that defendants will be held liable only if the names of the two payees, unknown to Mergenthaler, were wholly fictitious and did not represent any real or actual firm or corporation. The allegations that Mergenthaler mistakenly believed that it was indebted to the two payees, and that its intention in issuing the checks was to pay a bona fide indebtedness for materials delivered to it, do not furnish any basis for imposing liability on these defendants, since Mergenthaler must bear any loss resulting from such a mistake on its part if the payees were real firms. (Cf. *Mohr.* v. *Lawyers Trust Co.,*

282 N. Y. 770, with *Cohen v. Lincoln Sav. Bank*, 275 N. Y. 399.)

In *Strang v. Westchester Co. Nat. Bank* (235 N. Y. 68, *supra*) one Bushnell, who owned a piece of property, falsely represented to plaintiff that the property was owned by one Remsen (a nonexistent person) and induced plaintiff to issue a check to Remsen in exchange for a bond and mortgage purportedly executed by him. Bushnell indorsed Remsen's name on the draft and defendant bank paid him the proceeds. In directing recovery for plaintiff, the court said, per CARDOZO, J. (p. 72): "The plaintiff did not loan her money to Bushnell, content to accept him as a borrower. He of all men was excluded. She loaned it upon the bond of Homer and Alice Remsen, with a mortgage as collateral. Undoubtedly, she believed, when she drew her check upon the bank, that Remsen was an owner of the property, and that the mortgage was a valid lien. This belief did not mean that some one else who had been expressly excluded as a borrower, had the right, because he was the owner, to step into the borrower's shoes. Remsen, if a real person, might have indorsed the draft without liability as a forger, however fraudulent the statement that he was the owner of the land (*Phelps v. McQuade, supra* [220 N. Y. 232]). Bushnell, having asserted that the borrower was some one other than himself, was not at liberty to indorse, whether he was the owner of the land or not."

The foregoing analysis of the main complaint leads to the conclusion that the first two causes of action in Manufacturers' third-party complaint against Mergenthaler are legally insufficient.

If in the main action it appears that Lobel had actually filed in the New York County Clerk's office trade-name certificates for "Clifton Manufacturing Co." and for "A. O. Schumacher & Sons" and was the sole owner of the businesses conducted under such trade names, and that the checks involved herein were indorsed by Lobel in his respective trade names, it will be unnecessary to cross-claim against Mergenthaler, for, as pointed out above, plaintiff can recover against Manufacturers only if it establishes that Clifton and Schumacher were nonexistent firms; or if in existence, that they were not owned by Lobel, who indorsed their names.

Disregarding the legal conclusions of Manufacturers' first cause of action, the facts alleged are that Mergenthaler had engaged in a course of dealings by issuing checks to Clifton and Schumacher and knew that such checks and those involved herein would be negotiated through banking channels. Never-

theless Mergenthaler negligently issued the checks; negligently permitted them to come into Lobel's possession; negligently failed to detect the forged indorsements; negligently failed to examine the returned cancelled vouchers, to audit its accounts, to inspect the invoices against which the checks were issued, and to audit its inventories against such invoices.

Mergenthaler owed no duty to anyone to avoid being defrauded into paying for goods which it did not receive, since it cannot recover from plaintiff or any defendant on the basis of such fraud. Insofar as Mergenthaler's alleged negligence failed to disclose the forgery of the indorsements, it may be a defense by the drawee bank against the drawer that his neglect to reconcile the returned vouchers with his check stubs prevented discovery that his signature on the checks had been forged (*Morgan* v. *United States Mtge. & Trust Co.*, 208 N. Y. 218, 223–228) or that the amounts of the checks had been altered (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219, 230). But " ' a depositor owes no duty to a bank requiring him to examine his pass-book or returned checks, with a view to the detection of forgeries in the endorsements; he has a right to assume that the bank before paying his checks will ascertain the genuineness of the endorsement ' " (*National Sur. Co.*, v. *President & Directors of Manhattan Co.*, 252 N. Y. 247, 254), except where he had been put on notice that an indorsement was forged and failed to compare it with available genuine signatures (*Prudential Ins. Co.* v. *National Bank of Commerce*, 227 N. Y. 510).

The cases uniformly hold that the drawer owes no duty even to the drawee bank to ascertain whether the payee named in his check is an actual person, firm or corporation. " The question of negligence cannot arise unless the depositor has, in drawing his check, left blanks unfilled, or by some *affirmative* act of negligence has facilitated the commission of a fraud by those into whose hands the check may come." (Italics supplied. *Crawford* v. *West Side Bank*, 100 N. Y. 50, 55.) " The depositor neither made misrepresentations as to the genuineness of the checks nor assisted the forger to make misrepresentations. * * * For the application of the doctrine of estoppel by carelessness there is here no room." (*National Sur. Co.* v *President & Directors of Manhattan Co., supra*, p. 257).

Accordingly, the drawer of a check to a nonexistent payee may be charged with negligence only " ' ' where he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alterations.' " (*Gutfreund* v. *East Riv. Nat. Bank*, 251 N. Y. 58, 62–64, *supra*; *National Sur. Co.* v. *President &*

*Directors of Manhattan Co., supra,* pp. 255–256.) Where however, the name of the payee has not been altered, the obligation devolves upon the drawee bank, and upon those who guaranteed indorsements to it, to satisfy themselves that the payee indorsing the check is the actual person, firm or corporation named therein. '' It is the general rule of law in this country, and such is the common law, that the drawee of a bill or check or persons purchasing it ' take the paper relying solely on the reputed responsibility of their transferers, and the other parties to it, and its apparent genuineness, and they, therefore, deal with it at their peril.' (*Crawford* v. *West Side Bank,* 100 N. Y. 50.) * * * It is on the faith of this rule that business in this country is conducted.'' (*Gallo* v. *Brooklyn `Sav. Bank,* 199 N. Y. 222, 226, repeated with approval in *American Sur. Co.* v. *Empire Trust Co.,* 262 N. Y. 181, 187.)

*Jacoby* v. *Kline Bros. Co.* (241 App. Div. 470, *supra*) is very similar on its facts to the instant case. Through the fraud of defendant's employee it was induced to issue numerous checks to Tri Rite Dresses, a nonexistent payee, under the belief that they were in payment of invoices for merchandise delivered. Prior to the check in suit, fifteen other checks indorsed by Tri Rite Dresses and one Goodman had been cashed by plaintiff and paid by defendant. In denying recovery, the court said, per UNTERMYER, J. (pp. 471–472) : '' It is suggested that the maker was negligent, first in issuing the check to the order of ' Tri Rite Dresses ' and later in failing to detect the forged indorsements when fifteen other checks, similarly indorsed, were paid. But the maker had the right to make the check payable to whomsoever it pleased and as a condition of payment to require indorsement by the payee and by no one else. In this respect there was no such negligence as will estop him to dispute the plaintiff's title. * * * Nor was the maker under any duty to determine whether the indorsement of the fifteen earlier checks was genuine (*Welsh* v. *German American Bank,* 73 N. Y. 424), as might be the case between depositor and depository in respect of forgeries appearing on the face of the check. (*Critten* v. *Chemical National Bank,* 171 N. Y. 219.) In *Shipman* v. *Bank of State of New York* (*supra*) the court said (at p. 328) : ' The examination of the checks would, of course, enable the plaintiffs to ascertain whether their own signature was genuine, and whether the amount, date or name of the payee had been changed, but would not necessarily enable them to detect the forgery of the payee's name. The law imposed no duty upon the plaintiffs to do more than they did to ascertain

whether the indorsements on the checks were genuine. The defendant's contract was to pay the checks only upon a genuine indorsement. The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must, at its own peril, determine that question. It has the opportunity, by requiring identification when the check is presented, or a responsible guaranty from the party presenting it, of ascertaining whether the indorsement is genuine or not. When it returns the check to the depositor, as evidence of a payment made by his direction, the latter has the right to assume that the bank has ascertained the fact to be that the indorsement is genuine.' "

Defendant points out that after the court had dismissed the transferee's complaint, upon reargument it directed a new trial in order to permit the transferee to introduce in evidence a certified copy of the trade-name certificate of " Tri Rite Dresses " which had been filed by Goodman. The outcome of the new trial is not disclosed, but if it resulted in a judgment for the transferee, that would have been because the payee was shown to have been in existence, not because of any defense of negligence against the payor.

In *American Sur. Co.* v. *Empire Trust Co.* (262 N. Y. 181, 186, *supra*), the court said, per LEHMAN, J.: " It [the drawer] did not assume the risk that the drafts would be paid upon the order of any person other than the payee named in the drafts. The drawee owed to the drawer the duty of paying the draft only to the payee named. The drawer owed to the drawee the duty only that it would not by act or misrepresentation facilitate a fraud upon it. * * * Negligent failure by the drawer to protect itself against fraud in procuring the making of the drafts does not cast upon the drawer the risk that they will be paid upon a forged indorsement."

In *City of New York* v. *Bronx County Trust Co.* (261 N. Y. 64, 71, *supra*) the court said, per CROUCH, J.: " The broad charges of negligence are not made out. While it is true that there had been similar forgeries for two years before the earliest one involved here, the forgeries were in the indorsements. So far as the evidence shows, no facts came to the city's knowledge as in *Prudential Ins. Co.* v. *National Bank of Commerce* (*supra*) to put it upon inquiry. Lacking such warning it had a right to rely upon the vigilance of the banks in detecting forged indorsements. Nor can it be justly said that there was negligence in the issuance and delivery of the checks. * * * True it is perhaps, that if there had been other officials to watch those

whose duty it was to watch, discovery might sooner have been made. But the city was not bound to anticipate a criminal conspiracy among its trusted employees (*Peoples Trust Co. v. Smith*, 215 N. Y. 488); nor did it, as a depositor, owe the duty of such extraordinary vigilance even to the plaintiff drawee, much less to the defendants. (*Paton Co. v. Guaranty Trust Co.*, 227 App. Div. 545; affd., 254 N. Y. 621.)''

In *Paton Co. v. Guaranty Trust Co.* (227 App. Div. 545), the court said, per MARTIN, J. (pp. 548–549):

'' In *Stumpp* v. *Bank of New York* (212 App. Div. 608) the court said: ' Under the authorities, I believe that the depositor, upon the return of his vouchers from the bank accompanied by a statement of the transactions in his account for the preceding month is bound to do three things: (1) Compare the vouchers returned by the bank with the check stubs in his stub book; (2) compare the balance entered in the statement (or pass book) with the balance in his stub book; (3) compare the returned vouchers with the list of checks entered in the statement (or check list). If such examination is made with ordinary care and no error is detected, then the depositor is not negligent; if he fails to make any or all of these comparisons, and such comparison would have disclosed the forgery, then he is negligent and cannot recover from the bank.'

'' The only negligence which the defendant may take advantage of to relieve itself from liability is the omission by the plaintiff to perform some duty which it owed the bank. The plaintiff owed the bank no duty to keep a proper set of books and records or to keep any books of record whatsoever, except a check book and check stubs. Therefore, whether the plaintiff had a proper bookkeeping system and kept proper records is immaterial. Nor was the plaintiff negligent in employing Hamm and relying implicitly upon his honesty and integrity until it had some notice to the contrary.''

*North Br. & Mercantile Ins. Co.* v. *Merchants' Nat. Bank* (161 App. Div. 341 [1st Dept.]) appears to be contrary, but it cannot be followed, in view of the positive subsequent holdings quoted above.

It is true that all of the forgery decisions were rendered after trial, where the defense of negligence was not made out, while here the court is considering the legal sufficiency of a pleading. However, these cases clearly indicate that the facts alleged in Manufacturers' first cause of action against Mergenthaler, even if proved at the trial, are insufficient to constitute a cause of action, in the absence of any allegation that Mergen-

thaler " by some affirmative act of negligence " or " by act or misrepresentation " facilitated the fraud. (*Crawford* v. *West Side Bank*, 100 N. Y. 50, 55, *supra; American Sur. Co.* v. *Empire Trust Co.*, 262 N. Y. 181, 186, *supra.*)

There is another reason why the first cause of action is legally insufficient. Even if Mergenthaler owed a duty to Bank of New York, its drawee, to take steps to avoid Lobel's fraud, it owed no such duty to Manufacturers or any of the other collecting banks. " This rule is based on the legal ground that there is no privity between the drawer and the collecting bank, and the drawer owes to it no duty of vigilance." (*Fallick* v. *Amalgamated Bank of New York*, 232 App. Div. 127, 130 [1st Dept.].) This absence of privity arises from the difference in the legal relationship between the drawer and drawee bank on one hand, and between the drawee bank and collecting bank on the other. The drawee bank is liable to the drawer for return of his deposit unless it can show that it has disbursed his money by his authority, but the drawee bank, in paying the collecting bank, disburses its own money, and the latter's liability " stands upon a different and entirely distinct ground — the receipt of money paid under a mistake and without consideration." (*Corn Exch. Bank* v. *Nassau Bank*, 91 N. Y. 74, 80, 81 *supra.*)

In *Fallick* v. *Amalgamated Bank of New York* (*supra*) the drawer sued the Amalgamated Bank (the drawee bank), which impleaded the Public National Bank, a collecting bank. The latter interposed the defense that the drawer was negligent and facilitated all of the forgeries and unauthorized indorsements. The court held the defense unavailable to the collecting bank, saying, per McAvoy, J., at page 130:

" The fourth affirmative defense is based upon the negligence of the plaintiffs' assignor in so facilitating the forgeries and taking no means to prevent their perpetration, that the loss should not be attributed to the impleaded bank. However, the suit against the impleaded defendant is not based upon the deceit of the Amalgamated Bank of New York through the negligence of the plaintiffs' assignor, but such liability is founded upon the guaranty of the indorsement of the payee by which the collecting bank represented to the Amalgamated Bank of New York that it might safely pay the checks. Therefore, negligence on the part of the drawer in failing to prevent or discover the forgeries is not material or relevant to the question as to whether the Public National Bank and Trust Company of New York guaranteed the indorsements of the payees, and constitutes no defense to the collecting bank.

" This rule is based on the legal ground that there is no privity between the drawer and collecting bank, and the drawer owes to it no duty of vigilance. The liability of the collecting bank to repay the moneys paid out on forged indorsements which were guaranteed by the collecting bank to the depositary bank is absolute, and not in any wise dependent upon the liability of the depositary bank to its depositor."

See, to the same effect, the comprehensive opinion of Burr, J., in *American Exch. Nat. Bank* v. *Yorkville Bank* (122 Misc. 616, affd. 210 App. Div. 885) where many of the pertinent authorities are cited and discussed.

Defendants contend that this rule has been abrogated by *City of New York* v. *Bronx County Trust Co.* (261 N. Y. 64, *supra*). In that case the Appellate Division granted judgment to the drawee bank against the collecting banks, saying (232 App. Div. 244, 247): " Negligence on the part of the drawer of a check is wholly immaterial and does not constitute a defense to the indorsing banks." The Court of Appeals affirmed, but said (pp. 70–71): " The defense of negligence in cases of this sort is ordinarily available only to the drawee bank, to which alone, it has been said, the depositor owes a duty of care. (*Corn Exchange Bank* v. *Nassau Bank*, 91 N. Y. 74, 80; *Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219, 229). The doctrine of privity, however, is not so conclusive as it once was. Whether there may be negligence under circumstances which would carry the tort liability of a depositor beyond his contract undertaking (Cf. *Ultramares Corp.* v. *Touche*, 225 N. Y. 170), we do not stop to inquire, for the question is not here. The broad charges of negligence are not made out."

I take this to mean no more than that the Court of Appeals may reconsider the rule if and when it is squarely presented. Special Term would not be justified in disregarding the positive decisions of our Appellate Division in *Fallick* v. *Amalgamated Bank of New York* (*supra*) and in *American Exch. Nat. Bank* v. *Yorkville Bank* (*supra*) until they are unequivocally overruled by the Court of Appeals.

Manufacturers' second cause of action against Mergenthaler alleges that the latter by drawing the checks admitted the existence of the payees named therein and their then capacity to indorse. This is merely a legal conclusion which states a proposition of law directly contrary to the holdings of the numerous cases cited, and must therefore be held insufficient to state a cause of action. Implicit in all decisions allowing recovery of amounts paid on checks to nonexistent payees is the

holding that the drawer does not admit the existence of a non-existent payee, despite the language of section 111 of the Negotiable Instruments Law, which was certainly known to the courts even if not expressly mentioned.

Where the question has been specifically discussed, the courts have stated unequivocally that one who issues a check to a nonexistent payee does not thereby admit the latter's existence and his then capacity to indorse. "The drawer of a draft is not estopped from disputing the existence of the payee and his capacity to indorse." (*Caledonian Ins. Co. v. National City Bank*, 208 App. Div. 83, 86 [1st Dept.].) "The maker being ignorant of the fact that the name of the payee was fictitious and the check not having come into the possession or been indorsed by the person, or any one assuming to be the person intended, the maker was not liable. No estoppel to deny liability existed." (*National Sur. Co. v. National City Bank*, 184 App. Div. 771, 776 [1st Dept.].)

In *City of New York v. Bronx County Trust Co.*, (261 N. Y. 64, 71–73, *supra*), the claim of estoppel by the collecting banks was based not alone upon the issuance of the checks but also upon an affirmative act by the payor which had allegedly facilitated the fraud. The payor city had sent a letter to all of the collecting banks explaining the plan for issuing these self-identifying checks in payment to its employees, and referring to the plan " as having been devised for making pay checks of the city of New York ' as good as currency '."

The motion to strike out Manufacturers' first and second causes of action is granted solely on the ground that they are insufficient in law (Rules Civ. Prac., rule 106). If they were legally sufficient, they would be properly interposed in the present action because the separate causes of action by plaintiff against Manufacturers and by the latter against Mergenthaler " arose out of the same transaction or series of transactions and common questions of fact and of law are involved." (*Great Northern Tel. Co. v. Yokohama Specie Bank*, 297 N. Y. 135, 142; Civ. Prac. Act, § 193-a.)

Manufacturers' third cause of action against Mergenthaler is based on the salvage agreement. The issues of fact and law involved in a suit on this agreement have no relationship to the issues in the main action. The only connection between the two is that Manufacturers may be entitled to some recovery under the salvage agreement if it is held liable in the main action. That is no reason for complicating the main action with collateral issues. Mergenthaler concedes that it has a fiduciary

obligation under the salvage agreement and Manufacturers as a beneficiary thereunder can obtain appropriate equitable relief either before or after judgment in the main action.

Manufacturers' fourth cause of action against Mergenthaler is based on the forgery bond. This presents three issues: (a) whether the bond protects Manufacturers as a collecting bank on the checks involved herein because it also happened to be a depository bank for Mergenthaler in other transactions; (b) whether the bond covers losses resulting from payment of checks to nonexistent payees; (c) whether the checks herein were checks to nonexistent payees. The first two issues have nothing to do with the instant action and their interposition would add unnecessary complications. As to the third, if it is decided in the main action that they were issued to nonexistent payees, that might be *res judicata* against Mergenthaler if the action had been instituted on its behalf. (Cf. *Gallo* v. *Brooklyn Sav. Bank,* 199 N. Y. 222, 228–229, *supra.*) Even if it were not, if Manufacturers should sue Mergenthaler on the forgery bond, and the latter should defend on the ground that the checks have been issued to existing payees, Manufacturers as the bona fide holder of the checks could thereupon recover the amounts thereof from Mergenthaler as drawer. Therefore Manufacturers suffers no prejudice if this claim is eliminated from the instant action.

The third and fourth causes of action are dismissed in the exercise of the court's discretion under subdivision 4 of section 193-a of the Civil Practice Act, without prejudice to the bringing of another action, and no opinion is expressed as to their legal sufficiency.

Motion granted. Settle order.

On reargument (November 16, 1948).

Plaintiff's motion for reargument is granted. Upon such reargument the original decision is recalled, and plaintiff's motion to dismiss the cause of action against American Surety Company contained in the third-party complaint of the third-party plaintiff, Manufacturers Trust Company, is granted, without prejudice to the bringing of an independent action by Manufacturers against American Surety.

The opinion herein was rendered on Mergenthaler's motions to dismiss the causes of action asserted against it in the third-party pleadings of Manufacturers and five other banks. Since Mergenthaler's motions were granted, plaintiff's motions to

dismiss the same causes of action pursuant to subdivision 4 of section 193-a of the Civil Practice Act became academic and were accordingly dismissed. Through inadvertence, the same disposition was made of plaintiff's motion to dismiss Manufacturers' cause of action against American Surety, although the latter had not moved for any such relief. However, the opinion on the Mergenthaler motions clearly sets forth my conclusion that the cause of action based on the bond issued by American Surety will only add unnecessary complication to this action, and that its elimination cannot prejudice Manufacturers. The disposition of this instant motion conforms to that opinion.

Manufacturers now asserts possible prejudice on the basis of a statement on information and belief by its attorney that, under the terms of the bond, any action by an insured thereunder must be commenced against American Surety no later than November 1, 1948. Since the language of the bond is not set forth, Manufacturers has not established that it is prejudiced if its instant action by a third-party complaint, which was commenced prior to November 1st, is dismissed without prejudice to the bringing of an independent action. In any event, plaintiff in the proposed order it served prior to November 1st indicated its intention to seek the modification now granted. Settle order.