BANK OF COMMERCE OF LOUISVILLE, APPELLANT, V. TILLIE MCCARTY, APPELLEE.

FILED MAY 29, 1930. No. 27211.

796

*Jesse L. Root* and *C. A. Rawls,* for appellant.

*W. R. Patrick* and *D. O. Dwyer, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and LIGHTNER, District Judge.

EBERLY, J.

Suit by plaintiff upon two causes of action consisting of two promissory notes each dated June 30, 1927, due "on demand," payable to plaintiff, and each bearing the signature of defendant as the sole maker thereof, one of which was for $5,000 and one for $1,000.

The issues presented by the record in this cause include: (1) Whether the defendant was induced to sign the instruments in suit by alleged fraudulent representations of the plaintiff; (2) whether the notes in suit were based upon adequate consideration; (3) whether the notes which plaintiff claims constituted the consideration for the notes in suit were forgeries; (4) and whether the defendant, who at all material times prior to March 12, 1926, was a married woman, ever charged her separate estate with the payment of any of the obligations to the bank.

There was a trial to a jury in the district court which resulted in a general verdict and finding for the defendant

as to both causes of action. From a judgment entered thereon, and an order denying a new trial, plaintiff appeals.

The transaction under investigation here opens with the evidence on behalf of the plaintiff of a promissory note payable to the plaintiff bank or order, dated August 22, 1924. The original of this note was not produced, but by secondary evidence the plaintiff seeks to establish it as an instrument executed by Robert McCarty and Tillie McCarty which was carried on the records of the bank as note number 5640. The execution of this note is positively denied by the defendant. Plaintiff sought to introduce in evidence a purported copy of note number 5640, which is identified in the record as exhibit B. This copy had been prepared by the witness on the Friday or Saturday preceding the trial in the district court without having the original in his possession and without making a comparison therewith. On objection, this purported copy was excluded and this ruling of the trial court is challenged as prejudicially erroneous. Without any determination of the technical correctness of the ruling challenged, we are of the opinion that the plaintiff was in no manner prejudiced thereby. Exhibit B contained no words charging "the sole and separate property" of Tillie McCarty as a *feme covert,* save and except: "I, Tillie McCarty, do hereby charge my *personal* estate with the payment of this note." (Italics ours.) At the time of entering into this obligation, according to the evidence of the plaintiff, the sole and separate estate of the defendant consisted of real estate only.

" 'Personal estate,' while a term of wide signification, is not ambiguous or uncertain, its common and legal meaning being entirely clear. In its ordinary legal signification it is understood to embrace every species of property not of a freehold nature, including intangible personal property as well as tangible. It may appear, however, from the surrounding circumstances that the term is used in a more restricted sense, as in the sense of personal effects, or tangible personal property." 48 C. J. 1046, citing *Maxwell v. Maxwell,* 106 Neb. 689; *Stearns v. Stearns,* 103 Conn. 213.

It may be conceded that the wife may pledge certain of her separate estate to the payment of this indebtedness of her husband (for which she is surety), and to the extent of the proceeds of such property her separate estate will be bound. But the right of the creditors to recover against her separate estate extends no further the limitations imposed by the terms of her contract. *Grand Island Banking Co. v. Wright,* 53 Neb. 574; *Northwall Co. v. Osgood,* 80 Neb. 764. In the instant case, the terms of exhibit B, above quoted, apparently limit the payee to recover against the "personal" estate of the wife only. And, though carrying the burden of proof, the plaintiff, so far as disclosed by this record, wholly failed to establish that the defendant possessed any personal estate at the time that this engagement was assumed by her, in view of the rule that the contract of a married woman as surety can only be enforced against the separate estate she possessed at the date of the contract referred to or described therein. *Kocher v. Cornell,* 59 Neb. 315; *Giltner State Bank v. Talich,* 115 Neb. 236. It would seem that the ruling of the trial judge in excluding exhibit B, if erroneous, would be error without prejudice. Certainly this conclusion is inescapable in view of the fact that oral evidence as to the exact terms of note 5640 was subsequently received, which was indeed more favorable to the plaintiff's contention than the terms of the rejected copy.

Proceeding now to the merits of the case, it may be said that the evidence in the record is conflicting. It is not claimed on behalf of the bank that prior to the execution of the notes in suit the defendant was obligated to the bank in any other capacity, save as surety on her husband's obligations. For this purpose it is insisted on the part of the bank that the defendant expressly bound her separate estate. The testimony on behalf of the bank tends to establish that about August 22, 1924, the defendant and her husband executed and delivered to the bank a joint note number 5640 in the sum of $5,000 which, according to the oral evidence introduced on behalf of the plaintiff, contained a clause binding the separate estate of

the wife; that subsequently note number 6367 was taken by the bank in renewal of 5640. This note, number 6367, bore date August 22, 1925, was for the sum of $5,000, due "on demand," and purported to bear signatures of "Robt. McCarty" and "Tillie McCarty," his wife. Robert McCarty died March 12, 1926. Subsequently, on July 6, 1926, a claim was filed in behalf of the bank in the probate court and in the estate of Robert McCarty based upon the promissory note number 6367, and also one of $200 and one of $300, the latter two notes being executed by Robert McCarty only. These claims were duly allowed. The estate of Robert McCarty proved insolvent, and on May 21, 1927, a dividend amounting to $242.42 was received by the bank, "being the first and final dividend." After this sum had been received by the bank it secured from the defendant the two notes now in suit, which are renewals of note number 6367 and the two notes aggregating $500 and interest, less the dividend received and which had been allowed as a claim against the estate of Robert McCarty. So far as disclosed by the probate records before us, Mrs. McCarty received nothing from her husband's estate, save and except the widow's allowance of $1,200 and certain uncollected accounts of doubtful value "in lieu of deceased's exemptions." We do not understand that the allowance of this claim by the county court was in legal effect to charge the defendant with a personal liability for its payment. Indeed, very respectable authority has determined that "A note given by a widow for the payment of a debt due from her deceased husband's estate, which estate is insolvent, is void in law without a new consideration; and such consideration will not be raised by an agreement on the part of the creditor that the note will be renewed from time to time after maturity." *Paxson v. Nields*, 137 Pa. St. 385. It would seem beyond question that the defendant's liability on the notes in suit must be sustained, if at all, upon her own acts in assuming her engagements.

Before entering into a discussion of the conflicting evidence, it may be noted that it is conceded by all parties to

this litigation that the name of Tillie McCarty, appearing in and as subscribed to the promissory note number 6367 of $5,000 which constituted the major portion of the consideration of the notes in suit, was never written by Tillie McCarty, and it is not contended by the bank that the defendant received any of the money represented by this note, or any of the notes of which this note last referred to constituted a renewal, and that none of such moneys entered into or became a part of or in any manner increased or enhanced her separate estate.

It is claimed on the part of the bank that Mrs. McCarty orally adopted the signature affixed to note number 6367 as her own; that the bank thereupon accepted this note in reliance on this fact and canceled and delivered note number 5640 to McCarty. On this point the testimony of the vice-president, one of the active officers of the bank, is that note number 6367 of $5,000 was first handed to him by Robert McCarty. At this time it bore the signature of Robert McCarty only, and that witness thereupon told McCarty: "We had his wife's name on a previous note and had been carrying her as one of the joint makers of the note and that we would not accept this note until she signed it;" that McCarty took the note "and later on, either that day or the next, I can't remember now, returned the note to the bank in the condition that you now see it;" that thereupon it was accepted by the bank, and that later Mr. Cleghorn and Mr. Larson, the cashier, called witness' attention to the signatures and to the fact "that the signature of Mrs. McCarty did not resemble her signature," that the matter was discussed by witness with Mr. Larson, and as the result of the conversation Mr. McCarty was called up and invited to come down to the bank. After he appeared and after a conversation with him, Cleghorn was sent by the bank officers to see Mrs. McCarty to have the signature authenticated. Witness Cleghorn qualifies and testifies that the signature "Robt. McCarty" attached to note number 6367 he knows to be the signature of Robert McCarty. Mr. Cleghorn testifies that he performed certain duties in the bank, and that Mr. Hastain,

the vice-president, requested him to put some notes he had in the note file, or "note case," as he called it. One of these was note number 6367. On examining the signatures on this note this witness states that he noticed the two signatures on this note "Robt. McCarty" and "Tillie McCarty," and he "called Mr. Larson's attention to it, that they looked so much like they were written by the same person," and that afterwards he called Mr. Hastain's attention to it. And this witness also testifies that he personally later presented this note to Mrs. Tillie McCarty, that when he arrived at the McCarty home he told Mrs. McCarty what it was and that it was a note Mr. McCarty had handed to the bank with her name to it, and that "I wanted her to verify her signature," and that Mrs. McCarty thereupon said: "That is all right, Mr. Cleghorn. Whatever Bob does is all right with me."

The defendant in her testimony expressly denies that she signed notes 5640 and 6367, contradicts the evidence of bank's witness Cleghorn, and expressly denies that she "admitted" or ever acknowledged the signature purported to be her own subscribed to note 6367, and wholly denies that she employed the language testified to by witness Cleghorn.

Wallace O. Shane, whose method as a handwriting expert was before this court in the case of *In re Estate of O'Connor*, 105 Neb. 88, testified on behalf of the defendant as an expert that he had examined the signatures attached to note 6367, the handwriting of the decedent Robert McCarty and also of the defendant Tillie McCarty as disclosed by specimens thereof admitted to be genuine, and also a certain exhibit admittedly written by the vice-president of the plaintiff bank. The method of the examinations followed and the reasons for the conclusions of the witness as testified by him in this case were substantially the results of the methods identical with those set forth and described in the case of *In re Estate of O'Connor, supra*. Shane's testimony was to the effect that the signatures attached to note 6367 were not written by either Robert McCarty, the deceased, or Tillie McCarty, the defendant,

but were written by the vice-president, one of the acting officers of the plaintiff bank. The jury's verdict in this instant case was consistent with his testimony which, if sufficient, establishes the facts to be that the signatures in question were forged. In the *O'Connor* case, *supra,* which was a civil action involving the alleged forging of a will, this court reversed the trial court and denied probate to the instrument offered, and in so doing announced the following principles:

"The mere opinion of witnesses who testify alone from familiarity with a signature and from comparing genuine and disputed writings has less weight generally on the issue of forgery than expert opinions based on scientific skill and sound reasons.

"The result of comparisons made by handwriting experts is a character of evidence sanctioned by statute and merits proper consideration on the issue of forgery in a civil action.

"Testimony of handwriting experts that a will offered for probate is a forgery, if based on sound reasons and circumstances supporting that theory, may be sufficient to overturn the testimony of subscribing witnesses that they saw the will executed."

The verdict of the jury in the instant case being a general finding in favor of the defendant, it would seem to follow that the evidence is such as supports the contention of the defendant that the signatures to note 6367 are in truth and in fact forgeries. If this forgery occurred, it must be regarded in law as the forgery of the plaintiff bank of paper by its terms payable to the bank, purporting to arise out of a transaction with the bank, and with no innocent parties involved, save and except the defendant. Such being the case, the bank is responsible for it. In this view of the situation the questions of ratification and estoppel claimed in favor of the plaintiff must be considered as arising in an action or transaction seeking to enforce an instrument forged by plaintiff against the defendant as the purported maker thereof, who in truth under the facts in this case received no part of the consideration involved in the transaction.

The terms of our negotiable instruments act applicable are: "Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." Comp. St. 1922, sec. 4634.

Is the defendant here "precluded" from asserting the invalidity of note number 6367? Certain cases hold that irrespective of estoppel or new consideration a forgery may be ratified. *Ofenstein v. Bryan,* 20 App. D. C. 1; *Hefner v. Vandolah,* 62 Ill. 483; *Goodspeed v. Cutler,* 75 Ill. 534; *Paul v. Berry,* 78 Ill. 158; *Murtaugh v. Colligan,* 28 Ill. App. 433; *Casco Bank v. Keene,* 53 Me. 103; *Greenfield Bank v. Crafts,* 4 Allen (Mass.) 447; *Bartlett v. Tucker,* 104 Mass. 336; *Wellington v. Jackson,* 121 Mass. 157; *Central Nat. Bank v. Copp,* 184 Mass. 328; *Corser v. Paul,* 41 N. H. 24; *Howard v. Duncan,* 3 Lans. (N. Y.) 174; *Shroyer v. Smeltzer,* 38 Pa. Super. Ct. 400; *Shannon v. Castner,* 21 Pa. Super. Ct. 294; *Crout v. DeWolf,* 1 R. I. 393. An examination of these cases discloses that a controlling element therein is "The promissor had full knowledge of the facts affecting his rights."

Assuming the testimony of the defendant to be true, she did not possess this knowledge at the time of the transaction pertaining to note number 6367 at the time she signed the notes in suit, and in addition thereto certain misrepresentations were made by the bank's representatives. But, aside from the misrepresentations made by plaintiff testified to by defendant, it would seem that the doctrine announced by the Minnesota case is in point. In *Wilson v. Hayes,* 40 Minn. 531, where alteration had been made in a promissory note, the court, after referring to the conflict of authority, said:

"Where the ratification is made to a third party—the holder of the instrument, who was not a party to the forgery

—we are not called upon to decide whether or not such ratification would create a valid liability on the instrument. All the authorities cited by appellant to the effect that a forgery may be ratified are of this class. But we have found no case where it has been held that a forged instrument can be ratified so as to give the forger himself a right of action upon it. It is legally impossible in such a case that the relation of principal and agent could exist between the parties, for one man cannot be the agent of another to make a contract with himself. Hence, it would seem that the doctrine of ratification can have no application to such a case. * * * But where there has been a fraudulent alteration of a written contract, which not only destroys the instrument but extinguishes the debt, it seems to us clear on principle that a subsequent assent to the alteration, given to the party who made it, without any new consideration, is, in any view of the case, a mere naked promise."

Indeed, a line of well-considered cases evidence the doctrine that without estoppel or a new consideration a forgery cannot be ratified. *Owsley v. Philips,* 78 Ky. 517; *Warren v. Fant's Trustee,* 79 Ky. 1; *Garrott v. Ratliff,* 83 Ky. 384; *Young's Admr. v. Hildreth,* 1 Ky. Law Rep. 401; *Workman v. Wright,* 33 Ohio St. 405; *Hood v. Nichols,* 7 Ohio Dec. 157; *McHugh v. County of Schuylkill,* 67 Pa. St. 391; *Shisler v. Vandike,* 92 Pa. St. 447; *Second Nat. Bank v. Wentzel,* 151 Pa. St. 142; *Henry Christian Building & Loan Ass'n v. Walton,* 181 Pa. St. 201; *Bucher v. Meixell,* 5 Pa. Dist. Rep. 375; *Boone v. Citizens Bank & Trust Co.,* 154 Tenn. 241.

It is to be remembered in the present case that defendant's evidence in the record tends to establish that, in the absence of knowledge on the part of the defendant as to the real nature of note 6367, the plaintiff bank secured its due allowance as a valid claim against the estate of Robert McCarty. Thereafter, while defendant was still in ignorance of the forgery, it also secured her signatures to the notes in suit ostensibly in part as renewal of note 6367. To do this, pressure was exerted, misrepresentations made,

and while defendant was in ill health, and in ignorance of the true facts as to note number 6367, she signed the instruments in suit which are payable "on demand." During these transactions, if witness Shane's evidence is true, the plaintiff bank was at all times chargeable with knowledge that note number 6367 was in truth a forgery which had never been executed either by McCarty or by the defendant. Therefore what the defendant did could in no manner have misled or deceived the plaintiff in this action. If this be true, it could not have been prejudiced in any manner or degree by the acts of the defendant. This court is committed to the doctrine that as between the original parties a renewal note is subject to the same defenses as the original. *Auld v. Walker,* 107 Neb. 676; *Berwyn State Bank v. Swanson,* 111 Neb. 141; *Nebraska State Bank v. Walker,* 111 Neb. 203. We are also committed to the view that, where material and fraudulent alterations are made in a bond evidencing an indebtedness, the bond and debt evidenced thereby are canceled and neither may be enforced against the promissor. *David City Building & Loan Ass'n v. Fast,* 114 Neb. 621. In this case, there being an absence of the elements of estoppel, a new and adequate consideration is required to support the notes in suit, which evidence of the defendant tends to establish did not exist. *Kansas Mfg. Co. v. Gandy,* 11 Neb. 448; *Linton v. Cooper,* 53 Neb. 400.

It is true that the evidence as to note number 6367 being a forgery is sharply conflicting, and the same is true as to the other material points of dispute between the plaintiff and defendant, but a careful examination of all the instructions in the light of the record has convinced us that these disputed questions of fact were properly submitted to the determination of the trial jury and that the evidence before us sustains the verdict which they have returned.

It follows therefore that the judgment thereon is correct and is

AFFIRMED.