NEGIM v. FIRST STATE BANK OF PICHER.

No. 25156.   June 18, 1935.

F. W. Church, for plaintiff in error.

E. C. Fitzgerald, for defendant in error.

OSBORN, V. C. J. This action was commenced in the district court of Ottawa county by the First State 'Bank of Picher, hereinafter referred to as plaintiff, against Minta Negim, John T. Kolar, and Robert Shomberger as an action upon a promissory note and for foreclosure of a chattel mortgage given to secure the same. From a judgment in favor of plaintiff, defendant Minta Negim appeals.

The petition of plaintiff alleges that on April 19, 1930, the defendant Minta Negim executed and delivered to the defendant John Kolar a promissory note in the sum of $12,000, payable in installments of $1,-000 each, the first installment being due October 31, 1931; that at the same time there was executed as security for said note a chattel mortgage on certain business property in the city of Picher; that John Kolar sold and assigned the note and mortgage to the defendant Robert Shomberger, who thereafter sold and assigned the same to plaintiff. For answer the defendant Minta Negim alleges that she did not sign the note or mortgage, and if her name appears thereon the same was forged and that no consideration passed to her as the maker of said note and mortgage. The evidence is sufficiently conclusive to justify a finding that the name of said defendant was signed to the note and mortgage by her husband, Charley Negim, who died prior to the institution of this action.

There is no contention that plaintiff actually signed the instruments in question. By way of reply to defendant's answer it is alleged that after learning all the facts concerning the instruments, she ratified and adopted the same, and they thereby became her own obligations. It is also pleaded that prior to the purchase thereof, certain inquiries were made of her, and that she did not inform plaintiff's agent that she did not sign the instruments, and by her failure to speak when she was given an opportunity to do so, she is now estopped from defend-

ing on the ground that her signature was forged or unauthorized.

Ross Bayless, vice president and director of the plaintiff bank, testified that during the month of October, 1930, he entered into negotiations with Shomberger for the purchase of the note and mortgage; that at that time he was acting for the bank as there had been some discussion about the purchase of the note and mortgage by the bank; that he told Shomberger that he would not consider purchasing the same without consulting Mrs. Negim; that in response to a call, Mrs. Negim came to the bank and talked with him about certain features of the transaction, at which time he had the note and mortgage on his desk and that Mrs. Negim saw them at that time; that she had made a claim of credit on the note for $2,000 or $3,000 and had filed said claim of record; that in response to his inquiry about this claim, she told him she thought she could show credits of approximately $2,000 which had not been allowed on the note; that he further told her that there was an interest payment due and she said that she would pay it in a few days; that he thereupon purchased the note for himself and not for the bank, reserving $2,000 of the purchase price until the claim of credit was settled; that within ten days thereafter she came into the bank and paid him $360 as interest due on October 21, 1930; that she thereafter paid another installment of interest on April 21, 1931, and thereafter paid another installment on October 17, 1931; that thereupon he sold and transferred the note to the plaintiff bank; that he notified her about that time that there was $1,000 due on the principal, and defendant informed him that she would not be able to pay the installment on the principal. He further testified that during the conversation with defendant she made no mention of the fact that she did not sign the note and mortgage.

Ralph Chambers, cashier of the plaintiff bank, testified that the bank was the owner and holder of the note and mortgage and had purchased the same from Bayless about October 30, 1931.

Defendant did not testify that she informed Bayless, when questioned about the matter, that she did not sign the note and mortgage. She admitted payment of the three installments of interest, but testified in this connection that she considered the note and mortgage obligations of her husband, and in making such payments she

was trying to clear his name. She further testified that she did not repudiate the obligation until suit for foreclosure was brought. She testified that the property covered by the chattel mortgage was in her name; that she did not execute the instrument called a notice of claim of credit which was attached to the chattel mortgage, but when questioned about it by Mr. Bayless, informed him that she thought she could find papers to show payments of at least $1,000 for which no credit had been given.

The cause was tried to the court, who found generally in favor of plaintiff and rendered judgment in favor of plaintiff for the amount of the note, with interest and attorney's fees, and ordered that the chattel mortgage be foreclosed.

Upon appeal, defendant contends that the obligation of the note and mortgage is not her obligation, that she did not sign said papers, and that no consideration or benefit passed to her. Plaintiff seeks to sustain the judgment on the ground that the evidence is sufficient to sustain the finding of the trial court that plaintiff, by her acts and conduct, ratified and accepted the obligation as her own, and since she failed to inform defendant's agent, when granted an opportunity to do so, that she did not sign the instruments and was not responsible therefor, she is now estopped to raise the defense of forgery or want of authority on the part of any other person to attach her name thereto.

Since it appears that defendant did not sign the note and mortgage and there is no evidence indicating that her husband was authorized to sign the same for her, we are called upon to give consideration to the provisions of section 11322, O. S. 1931, as follows:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

It appears that in various other jurisdictions where the Negotiable Instruments Law has been adopted, this provision has been construed in cases where the facts are somewhat similar to the facts with which we are dealing here. In the case of Beeland v. Clark (Ga.) 169 S. E. 681, it is said:

"The Negotiable Instruments Law, as embodied in section 4269 (23) of Park's Code Supp. 1926 (vol. 12), provides that: 'When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right * * * to enforce payment thereof against any party thereto can be acquired through or under such signature unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.' The work 'precluded' has been held to be synonymous with 'estoppel', and not to include ratification or adoption of the instrument or signature thereon unless these involve also the elements of estoppel. Brannan's Neg. Instr. Law (4th Ed.) 182, 183. To create such an estoppel, there must be actual injury or damage. Whether, in the absence of an estoppel, a forgery may be ratified so as to create a liability on the instrument itself is a question on which there is much conflict of authority. A minority of courts hold that one whose signature may be forged to a promissory note, and who, with knowledge of all the circumstances and intending to be bound, acknowledges the signature or agrees to pay the note, and thus assumes the obligation as his own, is liable to the same extent as if he had originally signed the instrument, without regard to whether his words and acts amount to an estoppel in pais. But the better considered, as well as weight of, authority is that a forgery is incapable of ratification, without a new consideration or circumstances constituting an estoppel. Some courts have placed the rule on the ground that the instrument is not merely voidable, but absolutely void; others on reasons of public policy; others hold that, in the absence of a new consideration, the ratification or adoption of a mere nudum pactum; and other courts base the doctrine on the ground that ratification involves the relation of agency, which can be made effectual only where an agent acts avowedly for or on account of the principal, and, since a forger never acts or assumes to act for another, the principle of ratification has no application. Marsh v. State Bank & Trust Co., 153 Tenn. 400, 284 S. W. 380, 48 A. L. R. 1365, 1367, where cases are collected and the contrary doctrines considered, and case note, page 1369; Boone v. Citizens Bank Co., 154 Tenn. 241, 290 S. W. 39, 50 A. L. R. 1369, 1373, and cases cited; Shinew v. First Nat. Bank, 84 Ohio St. 297, 95 N. E. 881, Ann. Cas. 1912C, 587, 36 L. R. A. (N. S.) 1006, and case notes 1007-1017; case notes 36 L. R. A. 539; 3 R. C. L. 1107, sec. 324; 8 C. J. 765, secs. 1029, 1030, and cases there cited. See, also, the more recent cases: Hartlep v. Murphy, 197 Ind. 222, 150 N. E. 312; Bank of Commerce v. McCarty, 119 Neb. 795, 231 N. W. 34; Briggs v. Hutson, 27 Ohio App. 93, 160 N. E. 860;

Austin v. Marzolf, 294 Pa. 226, 143 A. 908, 909."

In the case of Olsgard v. Lemke (N. Dak.) 156 N. W. 102, it is said:

"Section 6908, Compiled Laws of 1913, which in effect provides that a signature which is forged or unauthorized is wholly inoperative, unless the party whose signature has been forged, etc., 'is precluded from setting up the forgery or want of authority', is construed, and held, that the word 'precluded' is used as synonymous with the word 'estopped,' and that it does not include ratification or adoption in their strict primary meaning, but only when they involve some of the elements of an estoppel."

See, also, Merchant's Bank & Trust Co. v. People's Bank of Keyser (W. Va.) 130 S. E. 142; Boone v. Citizens Bank & Trust Co. (Tenn.) 290 S. W. 39.

In the case of First Nat. Bank v. Wolfe, 140 Md. 479, 117 Atl. 898, 25 A. L. R. 172, it is said:

"The law applicable to cases of this character is that one by his conduct, or even by mere silence, may estop himself from defending against the payment of a note on the ground that the signature thereto was a forgery, if it be shown that the holder, in relying thereon, was misled thereby to his injury, provided it be further shown that it was the duty of the party, and he had an opportunity, to speak. Hardy & Bros. v. Chesapeake Bank, 51 Md. 562, 34 Am. Rep. 325; Shinew v. First Nat. Bank, 84 Ohio St. 297, 36 L. R. A. (N. S.) 1006, 95 N. E. 881. Ann. Cas. 1912C, 587; Viele v. Judson, 82 N. Y. 32; Wiser v. Lawler, 189 U. S. 260, 47 L. Ed. 802, 23 S. Ct. Rep. 624; Dominion Bank v. Ewing, 7 Ont. L. Rep. 90, and affirmed in 35 Can. Sup. Ct. 133; and others; or, as stated by Mr. Daniels in his work on Negotiable Instruments, vol. 2. sec. 1353: 'If a person whose name has been forged knows that the holder, a bank, is relying upon the forgery, he will not be permitted to remain silent to its injury'."

In the case of Marsh v. State Bank & Trust Co., 153 Tenn. 400, 284 S. W. 380, 48 A. L. R. 1365, it is said:

"A person whose name has been forged to a note may be estopped by his admission, on which others may have changed their relations, from pleading the truth of the matter to their detriment. 3 R. C. L. sec. 323, p. 1107; Robinson v. Barnett, 18 Fla. 602, 43 Am. Rep. 327; Lewis v. Hodapp, 14 Ind. App. Ill. 56 Am. St. Rep. 295, 42 N. E. 649; First State Bank v. Williams, 143 Iowa, 177, 23 L. R. A. (N. S.) 1234, 136 Am. St. Rep. 759, 121 N. W. 702; West Philadelphia Nat. Bank v. Field, 143 Pa. 473, 24

Am. St. Rep. 562, 22 Atl. 829, 36 I.. R. A. 541, note."

See, also, annotation and authorities 48 A. L. R. 1370, and 25 A. L. R. 177.

It is urged by defendant that none of the acts relied upon to constitute the estoppel were performed after the bank acquired the note and mortgage. We must, therefore, determine whether or not there is an estoppel against defendant in favor of the bank, or whether, by the acts and conduct of defendant, the bank was induced to change its position in regard to the note and mortgage and would suffer detriment or injury if defendant be permitted to set up the defense of forgery. Bayless was vice president and a director of the plaintiff bank. The record does not show that any other officer of the bank made investigation regarding the facts or circumstances connected with the execution of the note and mortgage or in regard to the liability of defendant thereon. Bayless testified, and it is not denied, that he made the investigation as agent of the bank, although he purchased the note and mortgage for himself and later sold and transferred same to the bank. In the light of all the facts and circumstances, it is evident that the bank relied upon his investigation, and except for the failure of defendant to speak when an opportunity was presented, the bank would not have parted with the consideration for which the note and mortgage were purchased.

The finding of the trial court was general, but such finding is a finding of each specific thing necessary to sustain the finding and judgment of the court. This necessarily includes a finding that defendant by her acts and conduct is estopped from now asserting as a defense to the note and mortgage that she did not sign and execute the same.

The judgment of the trial court is affirmed.

McNEILL, C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. RILEY and WELCH, JJ., absent. BAYLESS, J., not participating.