CALLAWAY v. HAMILTON NAT. BANK OF WASHINGTON et al.

No. 10908.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 22, 1951.

Decided Feb. 28, 1952.

Keith L. Seegmiller, Washington, D. C., for appellant.

Philip S. Peyser, Washington, D. C., with whom Roger J. Whiteford, Washington, D. C., was on the brief, for appellee Hamilton Nat. Bank of Washington. John J. Wilson, Washington, D. C., also entered an appearance for that appellee.

George E. Monk, Washington, D. C., with whom Nelson T. Hartson, Washington, D. C., was on the brief, for appellees Federal Reserve Bank of Richmond and Continental Illinois Nat. Bank & Trust Co.

Charles Patrick Clark, Washington, D. C., for appellees First Nat. Bank of Dyer and Federal Deposit Ins. Corp.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This controversy concerns the liability of a bank for honoring checks of its customer, where the endorsements are challenged as not being those of the intended payee. The case comes before this court on appeal from an order of the United States District Court for the District of Columbia, which on motion of the depository bank dismissed the customer's complaint on the ground that it set forth no claim upon which relief could be granted.[1] Rule 12(b)(6), Fed.Rules Civ.Proc. 28 U.S. C.A.

The District Court had before it, in addition to the complaint, an affidavit submitted by plaintiff, and a stipulation between the parties by which certain documents were included in the record for all purposes, including those of the motion. The defendant Hamilton Bank served no answer and disputed none of the allegations contained in plaintiff's complaint and affidavit. It filed no papers laying a factual foundation for its defense. Instead, it chose to rely on plaintiff's own assertions, attempting on the basis of them to show that the purported cause of action was defective and to establish affirmative defenses which must usually be pleaded and proved. Thus there is no factual dispute on the face of the record.

Normally, Rule 12(b) requires that where "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss for failure to state a cause of action] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to [a summary judgment] motion by Rule 56." Rule 12 (b), Fed.R.Civ.P. The District Court did not purport to follow the mandate of Rule 12(b); after argument, it entered an order dismissing the complaint. However, the extrinsic material presented was evidently considered by the District Court in reaching its decision, and both parties ask us to consider it. We think we may properly do so. Before the adoption of the quoted provisions of Rule 12(b) in 1948, material extrinsic to the pleadings was often considered on motions to dismiss, by both trial and appellate courts. E.g., Farrall v. District of Columbia A.A. U., 80 U.S.App.D.C. 396, 153 F.2d 647; National War Labor Board v. Montgomery Ward & Co., 79 U.S.App.D.C. 200, 203, 144 F.2d 528, 531, certiorari denied 323 U.S. 774, 65 S.Ct. 134, 89 L.Ed. 619; Boro Hall Corp. v. General Motors Corp., 2 Cir., 124 F.2d 822; and see Advisory Committee's Note to 1948 amendment to Rule 12(b). This practice has continued since

---

1. The District Court at the same time dismissed third-party complaints seeking reimbursement from forwarding banks, and the third-party defendants are also appellees here. However, the claims against the impleaded banks were based solely on asserted rights to recover over should the original defendant be found liable. Therefore, for the sake of simplicity, we will deal only with plaintiff-appellant and his bank (the Hamilton National Bank of Washington), and will refer to the latter as defendant or appellee.

the 1948 amendment. Washington v. McGrath, 86 U.S.App.D.C. 343, 182 F.2d 375.[2] And we think that a statement of our views as to the legal conclusions to be drawn from the record, including the extrinsic matter, will expedite the ending of this litigation.

In dealing with the record on this appeal, however, we must observe the usual rule that on a motion to dismiss, the plaintiff's allegations are to be taken as true and all reasonable favorable inferences arising therefrom are to be indulged. Dioguardi v. Durning, 2 Cir., 139 F.2d 774. A motion to dismiss should not be sustained "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim" set forth by the plaintiff. Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, 412. See also Dollar v. Land, 81 U.S.App.D.C. 28, 154 F.2d 307, affirmed 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209. Further, regardless of what label may be attached to this proceeding at this stage, we think we must dispose of it on the following basis: First, as indicated above, we must take plaintiff's assertions of fact as true—they are not disputed, nor are they patently false. Second, we must not attempt to resolve any conflict in the inferences to which they give rise, for to do so would go beyond the proper scope of either a motion to dismiss or one for summary judgment. Sartor v. Arkansas Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Ottinger v. General Motors Corp., D.C.S.D. N.Y., 27 F.Supp. 508; Farrall v. District of Columbia A.A.U., supra. Third, we must determine whether, if all conflicting inferences were to be resolved in plaintiff's favor at a trial, he would nevertheless not be legally entitled to a recovery. For if such be the case, then clearly he has failed to state a claim on which relief can be granted [Rule 12(b)(6)], and he has also failed to raise an issue of *material* fact or show that defendant is not entitled to judgment as a matter of law [Rule 56]. Extrinsic material may, of course, operate to hurt rather than help the plaintiff's case.

Viewed in this light, the complaint and affidavit disclose that during September, 1947, appellant, a resident of Alexandria, Virginia, decided to invest in a home furnishings business then being carried on in Lansing, Illinois, by Peter and Bernice Hoeksema. At that time, he entered into an oral agreement with the Hoeksemas whereby a corporation would be formed under the title "Peter Hoeksema, Inc.," to which the Hoeksemas would transfer the assets and good will of their business, valued at $20,000. Appellant undertook to contribute $10,000 in cash, and stock was to be issued to the three incorporators in proportion to their respective contributions. The articles of incorporation were drawn and signed by the parties, and Peter Hoeksema was instructed to take the necessary further steps to complete the organization of the company under Illinois law.

Late in October of 1947, Peter Hoeksema advised appellant that the corporation would be formed and placed in operation about November 1. Relying on this information, appellant on October 25 (from his residence in Virginia) mailed Hoeksema a check drawn on the Hamilton Bank (doing business in the District of Columbia) in the amount of $1,000, payable to the order of "Peter Hoeksema, Inc.," and

2. The courts must, of course, take care to see that neither party is surprised or suffers prejudice when extrinsic material is considered on a motion to dismiss or when such a motion is converted into one for summary judgment. Cf. Sardo v. McGrath, 90 U.S.App.D.C. —, 196 F.2d 20. The final clause of Rule 12(b) reinforces the policy that each party shall be clearly advised of the procedures being followed and the scope and nature of the issues to be resolved, and shall be accorded full opportunity to present his case.

No surprise or prejudice will result, however, in the present litigation. The extrinsic material here involved is of the sort receivable under Rule 56 and commonly considered on motions to dismiss, and both parties have sought its consideration. And, whether the order below be considered a dismissal under Rule 12(b) or, as appellee suggested at the hearing in this court, a summary judgment, the tests governing our disposition of this case remain the same.

intended as the first payment toward his $10,000 contribution. In the belief that the corporation had been formed and that the Hoeksemas' furniture business had been transferred to it, appellant subsequently sent Hoeksema four more checks to complete his contribution to the corporation. These checks, each of which was payable to the order of "Peter Hoeksema, Inc.," were as follows: November 1, 1947, $4,000; November 20, 1947, $3,000; January 1, 1948, $500; and March 1, 1948, $1,500. On the back of each of the five checks is the hand-written endorsement "Peter Hoeksema, Inc.," as well as the stamped endorsements of various banks and trust companies. The first bank to handle the checks was the First National Bank of Dyer, Dyer, Indiana. All were honored by the defendant Hamilton Bank.

No directors' or stockholders' meetings were held by the new corporation and no stock certificates were issued. As time went on, appellant became anxious as to the affairs of the business, demanded that he be shown a financial statement, and requested that stock certificates be issued to him. Under various pretexts Peter Hoeksema put him off until finally, late in November, 1949, appellant sent a lawyer out to Illinois to investigate. As a result of the investigation, appellant learned on December 6, 1949, that Peter Hoeksema had not filed the articles of incorporation until December 6, 1947 (after three of the five checks had been issued), that he had not transferred any assets to the corporation or opened a bank account for it, and that the corporation had carried on no business and had received none of the proceeds of the checks. Appellant alleges on informa-

tion and belief that the funds derived from the checks were in fact appropriated by the Hoeksemas for their own benefit and that their assets have been dissipated to the point where neither of them has sufficient funds to reimburse appellant for the checks.

 The crucial allegation of the complaint is to the effect that "The name 'Peter Hoeksema, Inc.' purporting to be an endorsement on the back of each of said checks, is not the endorsement of the payee thereof. * * *" Appellant bases his action on the undisputed premise that a depository bank must pay checks in strictest accordance with the direction of its depositor. National Metropolitan Bank v. Realty Appraisal & Title Co., 60 App.D.C. 86, 47 F.2d 982; U. S. Cold Storage Co. v. Central Mfg. District Bank, 343 Ill. 503, 175 N.E. 825, 74 A.L.R. 811. Appellant's theory is that his direction to the Hamilton Bank was to pay the checks sued upon only to the order of the corporation designated as payee—to wit: Peter Hoeksema, Inc.; that the named payee or its authorized agent did not endorse the checks; and that therefore payment was not made to the payee's order in accordance with the instructions. See Bank of New York v. Public Nat. Bank and Trust Co., 195 Misc. 812, 82 N.Y.S.2d 694, 92 N.Y.S.2d 620, affirmed 275 App. Div. 932, 90 N.Y.S.2d 701, affirmed 301 N.Y. 503, 93 N.E.2d 71. Essentially, appellant proceeds on the theory that the endorsements are forgeries, and it is only upon such a theory that he can recover from appellee:[3] his bank would not be chargeable with the negligence or similar default of a forwarding bank.[4]

---

**3.** It should be emphasized that the only liability at issue is that of the Hamilton Bank to its depositor. The complaint does not bring in question the possible liability of forwarding banks to appellant or of anyone to Peter Hoeksema, Inc.

**4.** It would seem that even the bank which initially honored the checks would not be accountable for the misappropriation of their proceeds, in the absence of knowledge or actual bad faith on its part, neither of which is alleged here. Gate City Bldg. & Loan Ass'n v. National Bank of Commerce, 126 Mo. 82, 28 S.W. 633, 27 L.

R.A. 401; Santa Marina Co. v. Canadian Bank of Commerce, 9 Cir., 254 F. 391, certiorari denied 250 U.S. 643, 39 S.Ct. 493, 63 L.Ed. 1186. Wagner Trading Co. v. Battery Park Nat. Bank, 228 N.Y. 37, 126 N.E. 347, 9 A.L.R. 340, taking an opposing view, is a minority decision repudiated by section 9 of the Uniform Fiduciaries Act, D.C.Code, § 28–2309 (1940); Burns' Ind.Stat. § 31–109 (1949); Smith-Hurd Ill.Stat., c. 98, § 242 (Perm.Ed.). See 9 Unif.Laws Ann. 26–27; Scott, Participation in a Breach of Trust, 34 Harv. L.Rev. 454, 469–70.

Appellee does not challenge the validity of this legal theory. But it contends that, for reasons to be considered, a cause of action is not stated despite the allegation of forgery, or, if stated, is defeated by defenses disclosed in the record. We must determine whether appellee's contentions are sustainable as a matter of law on the facts alleged by appellant.

■ Appellee argues, first of all, that the validity of the endorsements is immaterial because, it says, the checks were knowingly drawn to a nonexistent payee and were consequently payable to bearer under section 9(3) of the Negotiable Instruments Law. The principle relied on— the so called "fictitious payee" rule—is clearly inapplicable to the fourth and fifth checks, for at the time of their issuance the organization of Peter Hoeksema, Inc., had proceeded to a point where, by Illinois law, its corporate existence was beyond challenge except by the state. Smith-Hurd Ill.Stat., c. 32, § 157.49 (Perm.Ed.). Under the usual form of the cited section of the Negotiable Instruments Law,[5] checks two and three also were not within the "fictitious payee" rule, because the nonexistence of the corporation was not known to the "person making [the checks] payable" to it. That person was appellant, the drawer and actual writer of the checks,[6] and even if, as urged by appellee, Hoeksema be considered appellant's agent in the premises, Hoeksema's knowledge of the payee's nonexistence is not imputable to appellant.[7] It is true that under the peculiar Illinois form of the statute, Smith-Hurd Ill.Stat., c. 98, § 29 (Perm.Ed.), the result might be altered if it were established that Hoeksema was the "agent" of appellant and that he "supplied the name" of the payee. But neither fact appears from appellant's allegations; and in any event we doubt that Illinois law is determinative here. See Brabston v. Gibson, 9 How. 263, 50 U.S. 263, 13 L.Ed. 131; Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992; Abt v. American Trust & Savings Bank, 159 Ill. 467, 42 N.E. 856; 2 Beale, Conflict of Laws 1047–50, 1205–07 (1935); Lorenzen, Conflict of Laws Relating to Bills and Notes 105, 122 (1919).

■ As to the first check, however, the situation is altogether different. Appellant's affidavit concedes that at the time he drew this instrument, he knew there was no "Peter Hoeksema, Inc." To avoid the conclusion that the first check was therefore bearer paper, appellant argues that his intent to have the named payee take the proceeds, rather than his knowledge that the payee had not yet been formed, should govern. The courts do recognize a converse rule: a drawer's intent that the payee he names shall have no interest in the check makes the check payable to bearer although the drawer knows the payee to be an existing person. Norton v. City Bank & Trust Co., 4 Cir., 294 F. 839; Union Bank & Trust Co. of Los Angeles v. Security-First Nat. Bank, 8 Cal.2d 303, 65 P.2d 355; American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034. But the proposition for which appellant contends is not the law. Janssen v. Tusha, 66 S.D. 604, 287 N.W. 501. Nor should it be, for such a rule would permit a depositor knowingly to draw checks to fictitious payees and then shift the loss to an innocent party upon

---

5. D.C.Code, § 28–110 (1940); Va.Code, § 5571 (1942); Burns' Ind.Stat. § 19–109 (1950).

6. United States v. National Bank of Commerce, 9 Cir., 205 F. 433; Grand Lodge of Kansas, A. O. U. W. v. Emporia Nat. Bank, 101 Kan. 369, 166 P. 490; Harmon v. Old Detroit Nat. Bank, 153 Mich. 73, 116 N.W. 617, 17 L.R.A.,N.S., 514; American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034.

7. Robertson Banking Co. v. Brasfield, 202 Ala. 167, 79 So. 651; Bank of New York v. Public Nat. Bank and Trust Co., 195 Misc. 812, 82 N.Y.S.2d 694, 92 N.Y.S. 2d 620, affirmed 275 App.Div. 932, 90 N. Y.S.2d 701, affirmed 301 N.Y. 503, 93 N. E.2d 71; and cases cited note 6, supra. Many decisions do impute the swindling agent's knowledge to his principal where he has authority to draw checks in the principal's name, which authority Hoeksema of course lacked. See U. S. Cold Storage Co. v. Central Mfg. District Bank, 343 Ill. 503, 175 N.E. 825; American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034.

subsequent failure of some hoped for circumstance to materialize. As to the claim based on the $1,000 check, dated October 25, 1947, the complaint as explained by the affidavit appears to us to be insufficient.

In another group of contentions, appellee takes the position that the corporation was at all pertinent times in being, *de facto* if not *de jure,* or at least that appellant is estopped from denying its existence. We need not consider the first assertion, because it is clear in any event that appellant, as drawer of the checks, is precluded from challenging the payee's existence. Negotiable Instruments Law § 61;[8] Goodrich v. Reynolds, Wilder & Co., 31 Ill. 490, 497; Vater v. Lewis, 36 Ind. 288. But it does not follow, as appellee maintains, that appellant is precluded from denying that the endorsement is the payee's. Nor is appellant foreclosed on this point by the rule that the drawer admits the "capacity" of the payee to endorse as well as his existence.[9] Appellee's argument that the endorsements were in fact placed on the checks by Peter Hoeksema as agent for the corporation is lost on the present record, for it does not sufficiently appear who did write the endorsements or whether that person was authorized to sign the corporate name to its checks.[10]

But appellees say that even if the endorsements were unauthorized, appellant is in no position to challenge them.[11] It seeks to make out from the present record elements of apparent authority, estoppel, and laches. But these are matters which the bank will have to plead and prove. As the record now stands, contentions that appellant is precluded on the issue of want of authority depend at best on inferences of fact, which we are forbidden to make. For example, there is nothing before us which shows that ap-

---

8. D.C.Code § 28–502 (1940); Va.Code, § 5623 (1942); Burns' Ind.Stat. § 19–502 (1950); Smith-Hurd Ill.Stat., c. 98, § 81 (Perm.Ed.).

9. Robertson Banking Co. v. Brasfield, 202 Ala. 167, 79 So. 651; U. S. Cold Storage Co. v. Central Mfg. District Bank, 343 Ill. 503, 175 N.E. 825; American Express Co. v. People's Savings Bank, 192 Iowa 366, 181 N.W. 701; Bank of New York v. Public Nat. Bank and Trust Co., 195 Misc. 812, 82 N.Y.S.2d 694, 92 N.Y. S.2d 620, affirmed 275 App.Div. 932, 90 N.Y.S.2d 701, affirmed 301 N.Y. 503, 93 N.E.2d 71. Section 61 of the Negotiable Instruments Law, supra, note 8, simply precludes such objections as that the payee had not complied with local laws for doing local business, where its endorsement was in all other respects regular. McMann v. Walker, 31 Colo. 261, 72 P. 1055; Betlyn Securities Corp. v. Bates, 177 Miss. 41, 170 So. 301.

10. Where authority to sign exists, however, the endorsement's effectiveness is not destroyed by the fact that the authority was abused and funds misappropriated. Dexter Savings Bank v. Friend, C.C.S.D.Ohio, 90 F. 703; Standard Steam Specialty Co. v. Corn Exchange Bank, 220 N.Y. 478, 116 N.E. 386, L.R.A.1918B, 575; McCabe Hanger Mfg. Co. v. Chelsea Exchange Bank, 183 App.Div. 441, 170 N.Y.S. 759; Note, 41 Yale L.J. 123. But for authority to exist it must be found, if not in express grant, then by vir-

tue of the parties' relationships. See Weaver v. Henderson, 206 Ala. 529, 91 So. 313; Jones v. Stoddart, 8 Idaho 210, 67 P. 650; Jackson Paper Mfg. Co. v. Commercial Nat. Bank, 199 Ill. 151, 65 N.E. 136, 59 L.R.A. 657; Gate City Bldg. & L. Ass'n v. National Bank of Commerce, 126 Mo. 82, 28 S.W. 633, 27 L.R. A. 401; Citizens' State Bank of Enderlin v. Skeffington, 50 N.D. 494, 196 N.W. 953; Coleman v. Seattle Nat. Bank, 109 Wash. 80, 186 P. 275, 12 A.L.R. 108; Corn Belt Bank v. Forman, 264 Ill.App. 589. The existence of authority is often a question for the jury. Crane v. Postal Teleg. Cable Co., 48 App.D.C. 54; Exchange Bank v. Thrower, 118 Ga. 433, 45 S.E. 316.

11. See Negotiable Instruments Law § 23: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, *unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.*" (Italics supplied). D.C.Code § 28–124 (1940); Smith-Hurd Ill.Stat., c. 98, § 43 (Perm.Ed.); Burns' Ind.Stat. § 19–123 (1950); Va.Code, § 5585 (1942).

pellee relied in any way on the facts which it says estop appellant.[12] Board of Trustees of town of Auburn v. Chyle, 256 Ky. 283, 75 S.W.2d 1039; Olsgard v. Lemke, 32 N.D. 551, 156 N.W. 102; Negim v. First State Bank of Picher, 172 Okl. 602, 49 P.2d 763. The law holds banks to a strict accountability, and a customer is not precluded from recovering simply because he has been lax in the conduct of his business affairs. Cf. National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383; National Metropolitan Bank v. Realty Appraisal & Title Co., 60 App.D.C. 86, 47 F.2d 982; Scott v. First Nat. Bank, 343 Mo. 77, 119 S.W. 2d 929; Bank of New York v. Public Nat. Bank and Trust Co., 195 Misc. 812, 82 N.Y.S.2d 694, 92 N.Y.S.2d 620, affirmed 275 App.Div. 932, 90 N.Y.S.2d 701, affirmed 301 N.Y. 503, 93 N.E.2d 71. A depositor's negligence may on occasion reach a point where his bank will be relieved of liability: Hillside Dairy Co. v. Cleveland Trust Co., 142 Ohio St. 507, 53 N.E.2d 499; and see Empire Trust Co. v. Cahan, 274 U.S. 473, 479-80, 47 S.Ct. 661, 71 L.Ed. 1158. But we cannot now say that any bar has here been shown as a matter of law.

A final argument merits brief attention. It is that appellant has no complaint here because the proceeds of the checks, said to be appropriated by the Hoeksemas, went to the very persons intended to receive them. This contention, of course, overlooks the fact that appellant chose to surround the transaction with the protections of the corporate form and consciously made the corporation his payee. His intent was that the corporation receive the funds and his object was that they benefit the furniture business. Both purposes were frustrated. The case would be different had the proceeds, or part of them, actually been spent for business purposes. Compare International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N.Y. 285, 79 N.E.2d 249, with Alent v. Bank of the United States, 131 Misc. 370, 226 N.Y.S. 653. But that is not the situation presented by this record.

We are not in this opinion endeavoring to pass upon the factual aspects of appellant's claim or of the defenses which the bank has made or may make against it. Resolution of many of the issues raised here will depend upon the views taken by the trier of the facts. We do not intend to pre-judge those issues.

For the reasons stated, the order of the District Court, as to both the original and the third-party complaints, will be

Reversed, and the case remanded for further proceedings not inconsistent with this opinion.

12. Reliance is also integral to the concept of "apparent authority." North Alabama Grocery Co. v. J. C. Lysle Milling Co., 205 Ala. 484, 88 So. 590; Zummach v. Polasek, 199 Wis. 529, 227 N.W. 33; Mechem, Outlines of Agency § 236 (3d ed. 1923).