Dr. Seymour L. JOFFE, Appellant,

v.

RIGGS NATIONAL BANK, Appellee.

No. 2846.

Municipal Court of Appeals for the
District of Columbia.

Argued Jan. 15, 1962.

Decided March 28, 1962.

Michael J. Hage, Washington, D. C., with whom Charles S. Sures, Washington, D. C., was on the brief, for appellant. David M. Wortman, Washington, D. C., also entered an appearance, for appellant.

J. Roy Thompson, Jr., Washington, D. C., with whom Bernard J. Gallagher, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

HOOD, Chief Judge.

Plaintiff, Dr. Seymour L. Joffe, a dentist, sued the Riggs National Bank, his depositary, for $3,000, the approximate sum alleged to have been paid out by the bank on forged indorsements of his name as payee. From a verdict for defendant bank, plaintiff appeals.

The facts are these: Since 1954 plaintiff has maintained a regular checking account at the Park Road Branch of the Riggs National Bank. Signature cards bearing his signature were on file at the bank. Upon establishing his own practice in August 1956, Dr. Joffe employed as his assistant one Marcia Hancock, who had served in a similar capacity with plaintiff when he was associated in practice with another dentist. Miss Hancock was given full responsibility

for keeping the doctor's books, using the system with which she had become familiar in her previous employ. Upon receiving payments from patients, by cash, check, or money order, she was to enter such payments on the patient's record card and in the daily cash receipt book, and transcribe all such entries to the monthly cash receipt ledger. Incoming cash was given by her to the plaintiff, while checks were kept in a box on her desk. At irregular intervals, whenever the doctor "felt a deposit was indicated," he would instruct Miss Hancock to take the accumulated checks to the bank, further instructing her that certain checks were to be deposited to his account and others were to be cashed and the proceeds returned to him.

Those checks which were to be deposited were not indorsed by the plaintiff personally, but were indorsed by Miss Hancock with a rubber stamp bearing a nonrestrictive indorsement: the plaintiff's name and address. Those checks which were to be cashed were signed personally by Dr. Joffe.

Dr. Joffe testified with regard to Miss Hancock's authority that she made out all deposit slips, and that she alone made the periodic trips to the bank. He further testified that he had never authorized her or anyone else to sign his name to a check, and that no one associated with the defendant bank had ever called him to verify that he had indorsed the checks presented.

Defendant offered one witness, the teller at the Park Road Branch who handled most of the transactions at issue in the case. She testified that when she first had dealings with Miss Hancock, she checked her identity with another teller and was informed that Miss Hancock was Dr. Joffe's nurse. At first, on possibly two occasions, she checked Dr. Joffe's indorsement against the sample of his signature on file at the bank, but not thereafter. She also testified that she never called Dr. Joffe with regard to Miss Hancock's authority to cash checks; she just "assumed" Miss Hancock had such authority "since she worked for

him and brought his deposits into the bank."

Sometime in March 1959 Dr. Joffe examined his records and found irregularities which aroused his suspicion. He reported the matter to the police and to the bank, and requested and received from his patients several hundred cancelled checks. Of these he identified about eighty as bearing forged indorsements. Miss Hancock was subsequently arrested and pleaded guilty to forgery.

It is agreed that the law applicable on these facts is Code 1961, § 28-124:

"Where a signature is forged or made without the authority of the person whose signature it purports to be it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

Early in its charge the court told the jury that if the doctor "was negligent in the operation of his business, then he's precluded from setting up the want of authority in Marcia Hancock." Later the court instructed the jury that "If you find that the negligence of Dr. Joffe contributed proximately to the cashing of the checks in question, then you will bring a verdict in favor of the Riggs Bank." The court further instructed the jury that "a person must use ordinary diligence in ascertaining the condition of his own operation, reasonable control and supervision of his business affairs. If you find such a failure here, and that it proximately contributed to plaintiff's loss, then you will find for the defendant, Riggs Bank." And towards the conclusion of the charge, the jury were told: "If you find that the Doctor was negligent, then you must find for the defendant."

These instructions were erroneous and misleading and almost amounted to directing a verdict for the bank; for there can be no doubt that the doctor was lax in supervising the financial affairs of his office. He admitted he rarely examined his daily cash receipt books; that he never checked the deposit slips prepared by Miss Hancock; and that he employed an accountant only once a year for the purpose of preparing his tax return; and he explained his actions by stating that he had implicit trust in Miss Hancock.

■ Despite some intimations to the contrary in early cases, it is now settled in this jurisdiction that: "The law holds banks to a strict accountability, and a customer is not precluded from recovering simply because he has been lax in the conduct of his business affairs." Callaway v. Hamilton Nat. Bank, 90 U.S.App.D.C. 228, 235, 195 F.2d 556, 563.

In Washington Loan & Trust Co. v. United States, 77 U.S.App.D.C. 284, 134 F.2d 59, the court, speaking through Groner, C.J., rejected the contention that mere negligence in business practices and methods will preclude recovery; and held that equitable estoppel may be invoked only when the negligence directly and proxi-

mately affects the conduct of the bank. The court cited with approval the rule established in the majority of the state cases to the effect that: " * * * negligence in detecting the fraud cannot be said to be the proximate cause of the payment by a bank of the forged paper, and that before the bank can justify payment it must be shown that the drawer was guilty of some act or conduct toward the drawee or holder equivalent to a representation." 77 U.S.App. D.C. 284, 287, footnote 2, 134 F.2d 59, 62, footnote 2.[1]

■ In the present case the jury were told at least twice that if the doctor was negligent he could not recover. Viewing the instructions as a whole, we find them too favorable to the bank. The jury should have been instructed that mere negligence on the part of the doctor in the conduct of his business would not preclude recovery; that in order to preclude recovery it was necessary that the bank show that the doctor's negligence directly and proximately affected the conduct of the bank in cashing the checks bearing the forged indorsements.

Reversed with instructions to grant a new trial.

1. See also the opinion of this court in B. F. Saul Company v. Rich Wine and Liquor Company, D.C.Mun.App., 120 A.2d 208; and R. Mars, The Contract Co. v. Massanutten Bank of Strasburg, 4 Cir., 285 F.2d 158.